**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

NATIONAL LIABILITY & FIRE INSURANCE
COMPANY,                                               CIVIL ACTION

       Plaintiff,                                    Case No.

   v.

MANFRED STERNBERG, ESQUIRE, and MANFRED
STERNBERG & ASSOCIATES, PC,

       Defendants.

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff National Liability & Fire Insurance Company ("National Liability"), by and through its counsel, Houston Harbaugh, P.C., hereby files the within Complaint for Declaratory Judgment.

**Nature of Action**

1.      This is an action to obtain a judicial determination and declaration pursuant to 28 U.S.C. §§ 2201 and 2202 regarding the parties' rights and obligations under an insurance policy issued by National Liability to named insured Manfred Sternberg & Associates, PC ("MSA") with respect to an underlying action seeking damages arising out of an alleged fraudulent commercial transaction for the sale of Covid-19 test kits.

2.      Specifically, National Liability seeks a declaration that it does not owe any duty to defend or duty to indemnify MSA and Manfred Sternberg, Esquire (collectively "the Sternberg Attorney Defendants") with respect to the underlying action.

**The Parties**

3.     National Liability is a corporation organized under the laws of the state of Connecticut, with its principal place of business at 100 First Stamford Place, Stamford, Connecticut 06911-3247.

4.     Manfred Sternberg, Esquire, is a citizen of the State of Texas, with an address of 1700 Post Oak Boulevard, 2 Boulevard Place, Suite 600, Houston, Texas 77056.

5.     Manfred Sternberg & Associates, PC is a professional corporation organized under the laws of the state of Texas with its principal place of business at 1700 Post Oak Blvd., 2 Boulevard Place, Suite 600, Houston, Texas 77056.

**Jurisdiction and Venue**

6.     This Court has authority to declare the rights of National Liability under 28 U.S.C. §§ 2201 and 2202.

7.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1), as complete diversity exists among the parties and the amount in controversy exceeds $75,000.00.

8.     Venue is proper in the Eastern District of Pennsylvania as the underlying action is currently pending in this district, and a substantial part of the events giving rise to National Liability's claim occurred in this district. *See* 28 U.S.C. § 1391(b).

**The Underlying Action**

9.     On February 23, 2022, American Environmental Enterprises, Inc. d/b/a TheSafetyhouse.com ("Safetyhouse") filed a lawsuit captioned *American Environmental Enterprises, Inc., d/b/a TheSafetyhouse.com v. Manfred Sternberg, Esquire and Manfred Sternberg & Associates, PC, and Charlton Holdings Group, LLC, and Samuel Gross* at Case No.

2:22-CV-0688-JMY in the United States District Court for the Eastern District of Pennsylvania ("the Underlying Action").

10.     As of the date of this Complaint for Declaratory Judgment, the Complaint in the Underlying Action has been amended once to add additional defendants and additional claims. The First Amended Complaint, described below, is the operative pleading at this time.  A true and correct copy of the First Amended Complaint is attached hereto as Exhibit 1.

11.     In the First Amended Complaint, Safetyhouse alleges that the Sternberg Attorney Defendants along with Defendants Charlton Holdings Group, LLC and Shlomo Gross a/k/a Samuel Gross (collectively the "Gross Defendants") fraudulently induced Safetyhouse to order and subsequently pay $1,965,000.00 for the purchase of 151,200 iHealth Covid-19 test kits. See Exhibit 1 ¶ 1.

12.     Safetyhouse further alleges that the order of the Covid-19 test kits was to be conducted through an escrow agreement with the Sternberg Attorney Defendants acting as escrowee, but the agreement was a ruse to defraud Safetyhouse as the Sternberg Attorney Defendants and the Gross Defendants "intended to defraud [Safetyhouse] into transferring them $1,965,000.00, without delivering the Covid-19 Test Kits." See Exhibit 1 ¶ 2.

13.     Safetyhouse further alleges that after the Sternberg Attorney Defendants and the Gross Defendants fraudulently induced it to wire the $1,965,000.00 into the Sternberg Attorney Defendants escrow account, the Sternberg Attorney Defendants wrongfully released the $1,965,000.00 in escrow without delivering to Safetyhouse the required signed Bill of Sale and the required Bill of Lading and other shipping documents evidencing the Covid-19 test kits were purchased and shipped to Safetyhouse. See Exhibit 1 ¶ 3.

14.     Safetyhouse alleges that the Sternberg Attorney Defendants and the Gross Defendants acted in a wrongful civil conspiracy with defendants Gary Weiss and his entity, A Solar LLC (collectively the "Weiss Defendants") and with Daphna Zekaria, Esquire and her law firm Sokolski & Zekaria, P.C. (collectively the "Zekaria Defendants") to defraud Safetyhouse out of the $1,965,000.00 that it was induced to wire to the Sternberg Attorney Defendants. See Exhibit 1 ¶ 4.

15.     Safetyhouse alleges that it was informed that it needed to wire transfer the $1,965,000.00 purchase price into the attorney escrow account of the Sternberg Attorney Defendants immediately in order to secure Safetyhouse's spot in the queue so the goods could be shipped immediately and that the Sternberg Attorney Defendants and the Gross Defendants promised to sign and return the agreement to Safetyhouse once the goods were transferred. See Exhibit 1 ¶ 27.

16.     Safetyhouse further alleges that defendants failed to deliver the Covid-19 test kits and failed to provide any refund of the $1,965,000.00 in escrow to Safetyhouse. See Exhibit 1 ¶ 5, 34-35.

17.     Safetyhouse further alleges that the Sternberg Attorney Defendants and the Gross Defendants "had no intention of performing as promised, and misrepresented that the Covid-19 test kits were currently available for purchase and shipment." See Exhibit 1 ¶ 36.

18.     Safetyhouse alleges that the Sternberg Attorney Defendants, the Gross Defendants, the Weiss Defendants, and the Zekaria Defendants acted in concert or amongst themselves in participating in a fraudulent scheme to deprive Safetyhouse of its $1,965,000.00. See Exhibit 1 ¶ 54.

19.     Safetyhouse further alleges that discovery to date has provided that the Sternberg Attorney Defendants have wire transferred a sum greater than $1,965,000.00 to the Weiss and Zekaria Defendants. See Exhibit 1 ¶ 55.

20.     Safetyhouse alleges that the conduct of all defendants was "intentional and knowing and deliberate, and so outrageous and extreme, so as to entitle [Safetyhouse] to an award of punitive damages." See Exhibit 1 ¶ 64.

21.     The First Amended Complaint in the Underlying Action asserts the following claims against the Sternberg Attorney Defendants:

a.      Count I states a claim for fraud in the inducement alleging that the Sternberg Attorney Defendants and the Gross Defendants deliberately, intentionally, and willfully induced Safetyhouse to purchase Covid-19 test kits by making false representations and promises that the test kits were available for quick sale, and that the purchase price of $1,965,000.00 was wrongfully and prematurely released by the Sternberg Attorney Defendants from the escrow account as Safetyhouse was not supplied with a bill of sale and bill of lading per the representations of the Gross Defendants and the Sternberg Attorney Defendants. See Exhibit 1 ¶¶ 65-76.

b.      Count II states a claim for fraud alleging that the Sternberg Attorney Defendants and the Gross Defendants deliberately, intentionally, and willfully made false representations to Safetyhouse regarding the availability and ability to sell the Covid-19 test kits to Safetyhouse "despite their actual knowledge that they did not intend to honor their representations

and they lacked the capacity to perform as promised." See Exhibit 1 ¶¶ 77-87.

c.     Count IV states a claim for wrongful civil conspiracy alleging that all defendants each wrongfully conspired with each other to fraudulently induce Safetyhouse "to send them almost two million dollars … without any intent or capacity to perform the alleged Agreement." See Exhibit 1 ¶¶ 96-108.

d.     Count VII states a claim for participation theory alleging that the Sternberg Attorney Defendants and the Gross Defendants made material misrepresentations to obtain the funds and to prevent and delay detection of the fraud, and "made these representations with knowledge that they were false." See Exhibit 1 ¶¶ 117-134.

e.     Count VIII states a claim for unjust enrichment/quantum meruit alleging that the Sternberg Attorney Defendants and the Gross Defendants unjustly enriched themselves at the expense of Safetyhouse by receiving the $1,965,000.00 purchase price of the Covid-19 test kits without Safetyhouse receiving anything in return. See Exhibit 1 ¶¶ 135-145.

f.     Count IX states a claim for intentional interference with existing contractual relations alleging that all defendants "took actions with specific intent" to harm the contractual relationship between Safetyhouse and its customers to whom it intended to ship the Covid-19 test kits. See Exhibit 1 ¶¶ 146-152.

g.     Count X states a claim for intentional interference with prospective economic advantage alleging that all defendants "took actions with specific

intent" to harm the contractual relationship between Safetyhouse and its customers to whom it intended to ship the Covid-19 test kits. See Exhibit 1 ¶¶ 153-159.

22.     In the First Amended Complaint, Safetyhouse seeks an amount in excess of $2,000,000 against the defendants, individually, jointly, and severally, including compensatory damages, consequential damages, and special damages, as well as punitive damages, attorney fees and costs and interests on all amounts and further relief as the court deems just and proper, to the maximum extent allowed by applicable law. See Exhibit 1 at Wherefore paragraphs.

### The National Liability Policy

23.     National Liability issued a Lawyers Professional Liability Policy, number LP105621, with a policy period of October 16, 2021 to October 16, 2022, to named insured Manfred Sternberg & Associates, P.C. A certified copy of the policy is attached hereto as Exhibit 2 (the "National Liability Policy").

24.     The National Liability Policy has limits of $500,000.00 "Per Claim" and $1,000,000.00 "Aggregate."

25.     The National Liability Policy contains the following insuring agreement which provides, in relevant part:

A.     INSURING AGREEMENT

Subject to all terms and conditions of this Policy, **we** will pay on **your** behalf all **claim expenses** and **damages** up to the Limits of Liability as set forth in the declarations of this Policy, for a **claim** to which this Policy applies that is first made against **you** during the **policy period** or during a prior policy issued by us and continuously renewed by the **Named Insured** up to the present **policy period**. Additionally, the **claim** must be reported to **us** during the **policy period**, or if applicable, reported to **us** during the sixty (60) day automatic extension of time to report **claims**. However, **our** agreement to defend or indemnify **you** for a **claim** shall only apply if:

7

1.      The **claim** arises from a **wrongful act** committed by **you** after the Policy Retroactive date and before the Policy expiration date;

2.      The **claim** arises from an act, error or omission in the performance of **legal services** by **you** on behalf of the **Named Insured** or any **predecessor firm**;

3.      The **claim** was not the subject of any notice previously given to any insurer, nor was the **claim** made under another policy of insurance;

4.      The applicable Limits of Liability of this Policy have not been exhausted by the payment of **claim expenses** or **damages**; and,

\*\*\*

26.    The National Liability Policy contains the following definitions:

1. **Claim** means a demand received by **you** for money or services arising from an act, error or omission in **your** performance of **legal services** for others. A **claim** shall include, but is not limited to, the service of suit or the institution of an arbitration proceeding against the **Insured** or a request to toll the statute of limitations. **Claim** does not include a demand for money or services in criminal proceedings of any type brought against an **Insured**, or in any proceedings that seek injunctive, declaratory, equitable or non-pecuniary relief or remedies. **Claim** also means a demand received by **you** for money or services arising from a **network incident**.

2. **Claim expenses** means:
a. Reasonable and customary fees for necessary legal work performed by attorneys designated or approved by **us**;
b. All other reasonable and necessary fees, costs and expenses approved by **us** and resulting from the investigation, adjustment, defense and appeal of a **claim**; and,
c. Premiums for any appeal bond, attachment bond or similar bond in an amount not to exceed the unexhausted Limits of Liability of this Policy, provided that **we** have no obligation to apply for or furnish any such bond.
**Claim expenses** do not include **crisis event expenses**, **disciplinary proceeding expenses, privacy incident expenses**, or salaries or expenses of either **your** or **our** employees or attorneys.
…

9. **Damages** means the amount that an **Insured** becomes legally obligated to pay as a result of any covered **claim** including, but not limited to, a monetary judgment, award or settlement, and any interest imposed on such judgment, award or settlement, but does not include:
…
b. Any civil or criminal:
(1) fines, sanctions, penalties, forfeitures;
(2) statutory penalties;

(3) legal fees;
(4) exemplary or punitive damages; or,
(5) awards designed to punish, deter, regulate conduct, fee shift or penalize;
imposed or awarded against an **Insured** or any client of an **Insured**, whether pursuant to any federal or state law, statute, regulation, ordinance, court rule or case law; …
...

14. **Legal services** means services provided to others by an **Insured** in the capacity as:
a. An attorney or notary public;
b. An arbitrator or mediator;
c. A title insurance agent;
d. A government affairs lobbyist or advisor;
e. An administrator, conservator, executor, guardian, trustee, receiver, or in any similar court appointed fiduciary capacity, provided such services are performed in connection with and incidental to the provision of **legal services** by the **Named Insured**;
f. An author, but only for the publication or presentation of legal research papers and legal writing relating to the practice of law, including materials for Continuing Legal Education credit, provided the total remuneration for such work is less than $25,000; or,
g. As a member of a bar association or other legal or attorney related ethics, peer review, accreditation, licensing or similar board, committee or organization;
but only if such services are performed as a member of, or on behalf of, the **Named Insured**. **Legal services** do not include the provision of, or failure to provide, any financial or investment advice or financial management.
…

30. **Wrongful act** means any actual or alleged negligent act, error or omission in the performance of **legal services**, or **personal injury** in the performance of such **legal services**, for others by **you**.

31. **You**, **your** or **Insured** means:
a. The **Named Insured** and any **predecessor firm** specifically named in the Declarations of this Policy;
b. Any present partner, principal, officer, director, shareholder, or employed lawyer of the **Named Insured**, but only during the performance of **legal services** in the course and scope of their duties on behalf of the **Named Insured**;
…

27.    The National Liability Policy contains the following defense provision:

1. Defense of **Claims**
**We** have the right and duty to defend **claims** brought against **you** seeking **damages** to which this Policy applies, even if the **claims** are groundless. However, **we** shall

have no duty to defend **claims** brought against **you** seeking **damages** or asserting **claims** not covered by this Policy. …

28. The National Liability Policy contains the following exclusions:

E.    EXCLUSIONS

This Policy does not apply to:

1. Any **claim** or request for Supplementary Payments based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any of the following:
    a. Any malicious or intentional act or abuse of process;
    b. Any dishonest or fraudulent act;
    c. Any willful or criminal violation of any law, statute or regulation; or,
    d. Any libel or slander committed with knowledge of its falsity.

    However, **we** will defend and pay **claim expenses** or **disciplinary proceeding expenses** for such allegations only if the **claim** or **disciplinary proceeding** is otherwise covered by this Policy, and until there is a final adjudication, judgment, order or ruling by a court or administrative body, or binding arbitration decision or conviction against an **Insured**, or a written document, legal admission or statement by an **Insured** establishing such conduct set forth in this exclusion, or a plea of *nolo contendere* or no contest regarding such conduct set forth in this exclusion. Once such conduct set forth in this exclusion is established as described above, **we** have the right to withdraw from the defense of the **claim** or **disciplinary proceeding**, the **Insured** shall reimburse **us** for all **claim expenses** or **disciplinary proceeding we** incurred defending the conduct set forth in this exclusion, and we will have no further liability for **claim expenses** or **disciplinary proceedings** or **damages**. **You** agree to accept the tender of the defense when **we** withdraw.

    Whenever coverage under this provision would be excluded, suspended or lost because of such conduct set forth in this exclusion by any **Insured**, **we** agree that such coverage, as would otherwise be afforded under this Policy, shall be applicable with respect to an **Insured** who did not personally participate, or personally acquiesce in or remain passive after having personal knowledge of such conduct.

2. Any **claim** or request for Supplementary Payments based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any of the following:

    ***
    g.    Any bodily injury, pain and suffering, sickness, disease or death of any person, or for the destruction, diminution in value or loss of any property

or asset, accounts, or of software, data or other information in electronic form, except that the exclusion shall not apply to mental anguish or emotional distress based upon or arising from **personal injury**;

\*\*\*

h.    Any **Insured's** conversion, misappropriation, embezzlement, commingling, defalcation or ethically improper use of or disposal of funds or other property, whether held on behalf of clients or third parties;

\*\*\*

n.    The loss or destruction, or any diminution in the value of any asset in **your** care, custody or control, or out of the misappropriation of, or failure to give an account of, any asset in **your** care, custody or control, including the commingling of funds;

29.    National Liability has been defending the Sternberg Attorney Defendants in the Underlying Action subject to a complete reservation of all rights under the National Liability Policy.

## COUNT I- DECLARATORY JUDGMENT

30.    National Liability hereby incorporates paragraphs 1 through 29, above, as if set forth at length herein.

31.    The First Amended Complaint in the Underlying Action does not allege a claim arising from a "wrongful act" committed by the Sternberg Attorney Defendants under the National Liability Policy.

32.    "Wrongful act" is defined in the National Liability Policy as "any actual or alleged negligent act, error or omission in the performance of legal services, or personal injury in the performance of such legal services, for others by you."

33.    The First Amended Complaint in the Underlying Action does not allege a negligent act, error or omission by the Sternberg Attorney Defendants, but instead alleges intentional, deliberate, and willful conduct by the Sternberg Attorney Defendants.

34.     The acts of the Sternberg Attorney Defendants were also not in the performance of "legal services," but instead were acts as an escrow agent for a business transaction.

35.     Consequently, the insuring agreement of the National Liability Policy is not triggered by the Underlying Action and, therefore, National Liability has no duty to defend or duty to indemnify the Sternberg Attorney Defendants in the Underlying Action.

36.     All of the claims against the Sternberg Attorney Defendants in the Underlying Action are excluded from coverage under the National Liability Policy by operation of Exclusion 2.h., which excludes coverage for "any claim…arising out of…[a]ny Insured's conversion, misappropriation, embezzlement, commingling, defalcation or ethically improper use of or disposal of funds or other property, whether held on behalf of clients or third parties."

37.      The Underlying Action alleges that the Sternberg Attorney Defendants wrongfully and prematurely released funds that they held in escrow on behalf of others, without delivering to Safetyhouse the required documents or the COVID-19 test kits, as part of a fraudulent scheme to deprive Safetyhouse of its $1,965,600.00 purchase price which was never returned to Safetyhouse.

38.     Thus, all claims against the Sternberg Attorney Defendants in the Underlying Action are excluded by Exclusion 2.h.

39.     All of the claims against the Sternberg Attorney Defendants in the Underlying Action are also excluded from coverage under the National Liability Policy by operation of Exclusion 2.n., which expressly excludes coverage for "any claim…arising out of… [t]he loss or destruction, or any diminution in the value of any asset in your care, custody or control, or out of the misappropriation of, or failure to give an account of, any asset in your care, custody or control, including the commingling of funds."

40.     All of the claims against the Sternberg Attorney Defendants in the Underlying Action are further excluded from coverage under the National Liability Policy by operation of Exclusion 2.g., which expressly excludes coverage for "any claim…arising out of…the destruction, diminution in value or loss of any property or asset…"

41.     The Underlying Action alleges the Sternberg Attorney Defendants fraudulently induced Safetyhouse to deposit the purchase price for Covid-19 test kits into its escrow account and wrongfully released escrow funds that were in their custody and control without authority.

42.     Thus, all claims against the Sternberg Attorney Defendants in the Underlying Action are expressly excluded under Exclusions 2.n. and 2.g.

43.     Exclusions 1.a. and 1.b. in the National Liability Policy also apply to exclude coverage because the Underlying Action arises from an alleged "malicious or intentional act" and "dishonest or fraudulent act" by the Sternberg Attorney Defendants.

44.     The punitive damages and attorney fees requested in the First Amended Complaint in the Underlying Action are further not covered under the National Liability Policy as the definition of "damages" in the National Liability Policy expressly excludes "legal fees" and "exemplary or punitive damages" awarded against an insured. Punitive damages are also not covered under the National Liability Policy as a matter of public policy.

45.     National Liability seeks judgment in its favor in the form of a declaration that:

a.      National Liability does not owe a duty to defend the Sternberg Attorney Defendants in the Underlying Action;

b.      National Liability may withdrawal from the defense of the Sternberg Attorney Defendants in the Underlying Action; and

c.      National Liability does not owe a duty to indemnify the Sternberg Attorney Defendants against any settlement or judgment in the Underlying Action.

WHEREFORE, National Liability respectfully requests that this Honorable Court grant declaratory relief in its favor in the form requested in paragraph 45 and award such other and further relief as the Court deems just and appropriate.

**JURY TRIAL DEMANDED**

Respectfully submitted,

Houston Harbaugh, P.C.

 /s/ *R. Brandon McCullough*
R. Brandon McCullough, Esq. (PA 208563)
Tyler C. Park, Esq. (PA 328429)
Houston Harbaugh, P.C
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222
(412) 281-5060

14