

04/15/2024

This letter certifies that the policy attached is an exact copy of the contract of insurance for policy number LP105621 issued by National Liability & Fire Insurance Company to Manfred Sternberg & Associates, P.C. from 10/16/2021 to 10/16/2022 with limits and coverage as described therein.

Sincerely,

Scott Patrick
President
Attorney Protective
a MedPro Group/Berkshire Hathaway company

**EXHIBIT**

**2**

5814 Reed Road Fort Wayne, IN 46835 | Phone: (877) 728-8776 | www.attorneyprotective.com

Policies are written by National Liability & Fire Insurance Company and administered by Attorney Protective.

## Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company or HMO first.  If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company or HMO.  If you don't, you may lose your right to appeal.

**National Liability & Fire Insurance Company**
To get information or file a complaint with your insurance company or HMO:
> **Call:  Customer Service at 1-260-486-0800**
> **Toll-Free:  1-877-728-8776**
> Email:  cs@attorneyprotective.com
> Mail:  5814 Reed Road, Fort Wayne, IN  46835

**The Texas Department of Insurance**
To get help with an insurance question or file a complaint with the state:
> Call with a question:  1-800-252-3439
> File a complaint:  www.tdi.texas.gov
> Email:  ConsumerProtection@tdi.texas.gov
> Mail:  MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091



**Thank you for renewing your legal liability insurance policy with Attorney Protective!**

Now when you think about your legal malpractice risks, you can be confident that you don't have to face these risks alone. You have an ally with financial strength, as well as a team of seasoned lawyers and specialists who use innovative claims processes.

By renewing your policy, you have uninterrupted access to many resources designed to assist you in your day-to-day practice, such as:

- **Attorney Protective website at www.attorneyprotective.com** – This website provides answers to frequently asked questions, details about our company, contact information and risk management tools.
- *AttPro Ally –* A quarterly newsletter that provides helpful information on risk avoidance and technology to assist your practice.
- **Risk Management Best Practices Database** – An online resource offering tips, sample documents, articles and more. Your firm password is: AttProBest
- **Risk Management Webinars** – Webinars are offered throughout the year and designed to increase your awareness of relevant and timely issues.
- **Risk Management Hotline** – A dedicated phone line allowing attorneys to ask questions regarding risk management, lawsuit prevention and claims repair. Dial (877) 728-8776 and choose option 3 to speak with our experienced claims attorneys about best practices, claims repair or specific situations. This service is exclusively available to our insured law firms.

Because our risk management services start on day one, here are a few tips:

- **Missed Deadlines** – A common error that causes numerous claims every year. A well-organized calendaring system designed for multiple independent inputs, whether kept in time management software, Outlook or an organized paper system, goes a long way to avoiding this risk.
- **Client Intake Procedures** – Maybe the best opportunity to avoid multiple risks. Ensure that there are procedures in place to evaluate such issues as conflicts of interest, client expectations (can they be reached?), or if the client has had a history of problems with other attorneys.
- **Too Much Stress** – A cause of increased errors. Learn to recognize the signs of stress, substance abuse and other emotional troubles. Firms should have documented procedures in place to recognize and address lawyers who need help before a problem arises.
- **Fee Suits** – A frequent and growing cause of malpractice counterclaims. Given the challenging economic conditions, it becomes even more critical to have a process in place to evaluate whether and when a suit for fees should be filed.

As you review your policy, should you have any questions please call your agent or Attorney Protective at (877) 728-8776.

Best Regards,

*Your AttPro Team*

5814 Reed Road Fort Wayne, IN 46835 | Phone: (877) 728-8776 | www.attorneyprotective.com

Policies are written by National Liability & Fire Insurance Company and administered by Attorney Protective.



## The policy offered through Attorney Protective's program provides comprehensive coverage. Here are just a few of the unique provisions you should keep in mind when a claim or disciplinary matter arises:

- The Attorney Protective program policy pays the first $25,000 in defense costs and fees on every covered claim before your deductible needs to be paid. If the defense costs and fees to resolve the claim are less than $25,000 and there is no indemnity payment, then you will not need to pay the deductible.

- If you are called in front of a disciplinary board, the Attorney Protective program policy pays for the defense of disciplinary proceedings of up to $25,000 per proceeding and up to $100,000 during the policy period.

- There are four different ways to reduce your deductible by 50% on every claim. You can review the four ways under the Collaborative Defense section of your policy.

**We recommend that you keep this sheet with your policy for easy reference.**

Policies are written by National Liability & Fire Insurance Company and administered by Attorney Protective.



a MedPro Group/Berkshire Hathaway company

### A Few Risk Tips for Your Firm

**To avoid a lawsuit resulting from a missed deadline, every attorney should have his/her own well-organized calendaring system. If feasible, good intake procedures should include:**

- ✓ A system designed for multiple independent inputs, whether kept in time-management software, Outlook or an organized paper system
- ✓ A backup, if at all possible
- ✓ A firm-wide calendaring system with a single data entry point
- ✓ Automatic reminders generated to the responsible attorney and to his/her secretary/assistant
- ✓ A process to double check entries after they are entered

**Careful client intake procedures may be one of the best opportunities to avoid the risk of lawsuits and claims.  Examples of good client intake procedures include:**

- ✓ A well-documented, comprehensive, and systematic process of examining and accepting new clients
- ✓ A robust conflict of interest checking process
- ✓ An early assessment of the reasonableness of client expectations
- ✓ A careful review of a new client's reasons for changing attorneys during the pendency of an existing matter
- ✓ An honest evaluation of whether the firm and attorney have the requisite subject matter expertise sufficient to competently handle the matter

**A robust conflict of interest checking process should include:**

- ✓ A written process that ensures mandatory and consistent conflict checks at client intake
- ✓ Examination of potential conflicts caused by personal relationships
- ✓ Examination of potential conflicts caused by business relationships
- ✓ Review of prior case involvement of non-lawyer staff
- ✓ A review of your state laws and ethics rules to determine if a conflict can be waived
- ✓ Careful documentation, if it is determined that a conflict can be waived
- ✓ Use of a written and signed conflict waiver in any matter where a conflict may arise, or even one where a conflict may appear to have arisen

**Instituting a suit against a client for unpaid fees results in a counterclaim for malpractice in a high percentage of cases, and should therefore be considered only as a last resort.  A proactive approach to avoid fee disputes includes:**

- ✓ A thorough evaluation of the client's ability to pay the fees during client intake
- ✓ An engagement letter that clearly outlines fees and expenses
- ✓ Withdrawing from the case promptly if fee disputes cannot be resolved
- ✓ A review of state laws and ethics rules prior to withdrawing from a case
- ✓ Careful timing of suits to avoid malpractice claims where possible

Policies are written by National Liability & Fire Insurance Company and administered by Attorney Protective.

**REPORTING CLAIMS**

Facing an allegation of malpractice is something we all hope will never happen to us. Attorney Protective's Professional Claims Team understands the importance of working with you for the best possible claims resolution. Typically, the more quickly a claim is reported, the more likely it can be resolved in a cost-effective manner without compromising the integrity of the claims process.

So, in the event a claim is made against you or your firm, or even if you just believe one is likely to be made, call Attorney Protective immediately at (877) 728-8776, or send an email to our claims team at claims@attorneyprotective.com. We'll refer you to a member of our Professional Claims Team so we can begin working on resolving both your concerns and your claim as soon as possible.

Special Note:  This Reference Guide is being provided solely to assist you during the process of reporting claims or potential claims. It does not amend or modify any of the conditions contained in your policy, including those set forth in the policy with respect to your obligations and the obligations of your law firm regarding giving notice of claims or potential claims.   Please read and follow the conditions set forth in the policy carefully.

Please feel free to contact your broker or independent agent if you have any questions.

Policies are written by National Liability & Fire Insurance Company and administered by Attorney Protective.



**Issuing Company:**
**National Liability & Fire Insurance Company**
**Stamford, Connecticut**

## DECLARATIONS

| Attaching To and Forming a Part of Policy No. : | Renewal Policy No. : LP105621 |
|---|---|

| ITEM 1 | **NAMED INSURED:** Manfred Sternberg & Associates, P.C.<br>**ADDRESS:** 1700 Post Oak Blvd<br>2 Blvd Place, Ste 600<br>Houston, TX 77056-3963 |
|---|---|
| ITEM 2 | **PREDECESSOR FIRMS:** N/A |
| ITEM 3 | **POLICY PERIOD:**　　　From 10/16/2021 To 10/16/2022<br>Both days at 12:01 a.m. at the mailing address of the Named Insured as shown here. |
| ITEM 4 | **RETROACTIVE DATE:** 10/16/1991<br>This insurance will not apply to any act, error, or omission which occurred prior to the date indicated here. |
| ITEM 5 | **LIMITS OF LIABILITY:**<br>　　　　　　　　PER CLAIM:　　$　500,000<br>　　　　　　　　AGGREGATE:　　$1,000,000 |
| ITEM 6 | **DEDUCTIBLE:**<br>　　　　　　　　PER CLAIM　　$15,000<br>　　　　　　　　AGGREGATE:　　$15,000 |
| ITEM 7 | **ANNUAL PREMIUM:** ▉▉▉ |
| ITEM 8 | **POLICY FORM:** ATY-0001-00-0116 |
| ITEM 9 | **ENDORSEMENT SCHEDULE:** |

| **FORM NO.** | **ENDORSEMENT NAME** |
|---|---|
| 0000-CCN-TX-0120 | Texas Complaint Notice Statement |
| ATY-1012-00-0116 | Aggregate Deductible Endorsement |
| ATY-2010-00-0116 | Securities Exclusion Endorsement |
| ATY-2015-00-0116 | Economic Sanctions Exclusion |
| ATY-9001-TX-0119 | Texas Amendatory Endorsement |
| ATY-9002-TX-0116 | Texas Deceptive Trade Practices Act Endorsement |

| ITEM 10 | **PRODUCER:** Daniels-Head Insurance Agency Inc<br>Po Box 160730<br>Austin, TX 78716-0730 |
|---|---|
| ITEM 11 | IF YOU HAVE QUESTIONS, PLEASE CALL: 1-877-728-8776 |

IN WITNESS WHEREOF, we have caused this Policy to be signed by our president and secretary and countersigned where required by law on the Declarations page by our duly authorized representative.

Countersigned By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿　　Dated: ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿



**Issuing Company:**
**National Liability & Fire Insurance Company**
**Stamford, Connecticut**

## Lawyers Professional Liability Policy

**THIS IS A CLAIMS MADE AND REPORTED POLICY. THIS POLICY ONLY APPLIES TO CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO US DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. CLAIM EXPENSES ARE INCLUDED WITHIN THE LIMIT OF LIABILITY AND THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES SHALL BE REDUCED AND MAY BE COMPLETELY EXHAUSTED BY THE PAYMENT OF CLAIM EXPENSES. PLEASE READ THIS POLICY CAREFULLY.**

In consideration of the payment of the premium, **your** obligation to pay the deductible, and in reliance on all statements in the Application and all supplementary information **you** provide to **us**, and subject to the Declarations, and all other terms, conditions, limitations, exclusions, and endorsements of this Policy, the **Named Insured** and **we** agree as follows:

### A.  INSURING AGREEMENT

Subject to all terms and conditions of this Policy, **we** will pay on **your** behalf all **claim expenses** and **damages** up to the Limits of Liability as set forth in the Declarations of this Policy, for a **claim** to which this Policy applies that is first made against **you** during the **policy period** or during a prior policy issued by **us** and continuously renewed by the **Named Insured** up to the present **policy period**.  Additionally, the **claim** must be reported to **us** during the **policy period**, or if applicable, reported to **us** during the sixty (60) day automatic extension of time to report **claims**. However, **our** agreement to defend or indemnify **you** for a **claim** shall only apply if:

1.  The **claim** arises from a **wrongful act** committed by **you** after the Policy retroactive date and before the Policy expiration date;

2.  The **claim** arises from an act, error or omission in the performance of **legal services** by **you** on behalf of the **Named Insured** or any **predecessor firm**;

3.  The **claim** was not the subject of any notice previously given to any insurer, nor was the **claim** made under another policy of insurance;

4.  The applicable Limits of Liability of this Policy have not been exhausted by the payment of **claim expenses** or **damages**; and,

5.  No **Insured** knew or reasonably should have known of a **prior claim** or **prior known incident** prior to the earlier of:

    a.  The inception date of the first policy issued by **us** to the **Named Insured** that was continuously renewed up to the inception date of this Policy; or,

    b.  The inception date of this Policy.

Notwithstanding the foregoing, with respect to **prior claims** that are first reported to **us** during this **policy period**, **we** will pay such **prior claims** under the terms and conditions, including all applicable Limits of Liability, of the policy in place at the time the **prior claim** was first made against an **Insured**.  Further, with respect to **prior known incidents** that are first reported to **us** as a **claim** during this **policy period**, **we** will pay such **claims** under the terms and conditions, including all applicable Limits of Liability, of the policy in place at the time an **Insured** first became aware that a **claim** might be made against any **Insured**.

B. DEFINITIONS

Wherever used in this Policy:

1.  **Claim** means a demand received by **you** for money or services arising from an act, error or omission in **your** performance of **legal services** for others. A **claim** shall include, but is not limited to, the service of suit or the institution of an arbitration proceeding against the **Insured** or a request to toll the statute of limitations. **Claim** does not include a demand for money or services in criminal proceedings of any type brought against an **Insured**, or in any proceedings that seek injunctive, declaratory, equitable or non-pecuniary relief or remedies. **Claim** also means a demand received by **you** for money or services arising from a **network incident**.

2.  **Claim expenses** means:

    a.  Reasonable and customary fees for necessary legal work performed by attorneys designated or approved by **us**;

    b.  All other reasonable and necessary fees, costs and expenses approved by **us** and resulting from the investigation, adjustment, defense and appeal of a **claim**; and,

    c.  Premiums for any appeal bond, attachment bond or similar bond in an amount not to exceed the unexhausted Limits of Liability of this Policy, provided that **we** have no obligation to apply for or furnish any such bond.

    **Claim expenses** do not include **crisis event expenses, disciplinary proceeding expenses, privacy incident expenses**, or salaries or expenses of either **your** or **our** employees or attorneys.

3.  **Commonly accepted technologies** means current and conventional methodologies designed to secure **confidential client information** and the **Insured's computer system** that are appropriate to the size and complexity of the **Named Insured** including, but not limited to, utilization of i.) firewall protection; ii.) wireless encryption, such as Wi-Fi Protected Access (WPA); iii.) password protection; and, iv.) a destruction protocol designed to remove or destroy **confidential client information** on any retired **computer system**, facsimile or copier machine.

4.  **Computer system** means any device that is used to work with client data, including, but not limited to, desktop computers, laptop computers, tablet computers, smartphones and software, including the data they contain, and associated input and output devices, terminal devices, data storage devices, network equipment, components, firmware and electronic backup facilities, including systems accessible through the Internet, intranets, extranets, or virtual private networks when such are used to work with client data.

5.  **Confidential client information** means confidential or proprietary information not available to the general public received by an **Insured** in connection with an act, error or omission in the performance of **legal services** to others regarding:

    a.  An individual client's non-public personal or financial information, or protected health information; or,

    b.  An entity or organization client's commercial information.

6.  **Controlled enterprise** means any existing or prospective entity, business enterprise, or real estate interest, other than the **Named Insured**, in which any **Insured** and/or their lawful spouse, or an accumulation of **Insureds** and/or their lawful spouses, at the time the **wrongful act** occurs or the **claim** is made:

    a.  Owns, owned or will own ten percent (10%) or more of the enterprise, entity, or real estate interest;

    b.  Votes, voted or will vote ten percent (10%) or more of the issued and outstanding voting stock or elects ten percent (10%) or more of the directors in an incorporated entity;

    c.  Is or was entitled to receive ten percent (10%) or more of the profits of an unincorporated enterprise or entity;

    d.  Holds, held or will hold ten percent (10%) or more of the debt instruments of the entity, enterprise, or real estate interest; or,

    e.  Is or was entitled to directly control, operate or manage the entity or business enterprise, or act as a general partner of a limited partnership, managing general partnership, or comparable position in any other business entity or enterprise.

ATY-0001-00-0116                    Page 2 of 16            © 2016 Attorney Protective. All rights reserved.

7.  **Crisis event** means:

    a.  The death, departure or debilitating illness of the sole proprietor, managing partner, or practice group leader of the **Named Insured**;

    b.  A potential dissolution of the **Named Insured**;

    c.  An incident of workplace violence related to the **Named Insured**; or,

    d.  The filing of an involuntary bankruptcy petition against the **Named Insured**.

8.  **Crisis event expenses** means reasonable fees incurred by the **Named Insured** for necessary consulting services provided by a public relations firm in response to a **crisis event**.

9.  **Damages** means the amount that an **Insured** becomes legally obligated to pay as a result of any covered **claim** including, but not limited to, a monetary judgment, award or settlement, and any interest imposed on such judgment, award or settlement, but does not include:

    a.  The return or restitution of legal fees, costs or expenses paid to or charged by the **Insured** for **legal services**, no matter whether claimed as a measure of the recovery sought, or as restitution, unearned professional fees, forgiveness of professional fees, forfeiture, financial loss or set-off;

    b.  Any civil or criminal:

        (1)  fines, sanctions, penalties, forfeitures;

        (2)  statutory penalties;

        (3)  legal fees;

        (4)  exemplary or punitive damages; or,

        (5)  awards designed to punish, deter, regulate conduct, fee shift or penalize;

        imposed or awarded against an **Insured** or any client of an **Insured**, whether pursuant to any federal or state law, statute, regulation, ordinance, court rule or case law;

    c.  The multiplied portion of multiplied awards;

    d.  Any costs incurred to comply with any order for injunctive or non-monetary relief or to comply with an agreement to provide such relief;

    e.  Any amount not insurable under the applicable law;

    f.  **Claim expenses**, **disciplinary proceeding expenses**, **crisis event expenses** or **privacy incident expenses**; or,

    g.  Any amount ordered to be paid, awarded or costs necessary to comply with any order or ruling in a **disciplinary proceeding**.

10. **Denial of service attack** means a malicious attack to make a server or network resources unavailable to authorized users resulting in:

    a.  The inability of an authorized user to access the **Insured's computer system**; or,

    b.  The inability of a client of an **Insured** to access his or her own **computer system** when such inability is directly caused by the **Insured's computer system**.

11. **Disciplinary proceeding** means a proceeding to investigate alleged professional misconduct, or other matters relating to attorney licensing or discipline, conducted by a bar association, professional disciplinary board or similar body regulating lawyer conduct. **Disciplinary proceedings** do not include criminal proceedings of any kind, or attorney disciplinary actions or proceedings filed with any type of regulatory agency not previously referenced in this definition, including but not limited to, the Securities and Exchange Commission, the United States Patent & Trademark Office or the Internal Revenue Service.

12. **Disciplinary proceeding expenses** mean reasonable and customary fees, costs and expenses, including legal fees for legal work performed by attorneys designated or approved by **us**, incurred in connection with **disciplinary proceedings**;

13. **Insured's computer system** means any **computer system**:

    a.    Leased or owned by a **Named Insured** and operated by an **Insured** for the **Named Insured's** benefit; or,

    b.    Operated by a **service provider** solely for the **Named Insured's** benefit.

14. **Legal services** means services provided to others by an **Insured** in the capacity as:

    a.    An attorney or notary public;

    b.    An arbitrator or mediator;

    c.    A title insurance agent;

    d.    A government affairs lobbyist or advisor;

    e.    An administrator, conservator, executor, guardian, trustee, receiver, or in any similar court appointed fiduciary capacity, provided such services are performed in connection with and incidental to the provision of **legal services** by the **Named Insured**;

    f.    An author, but only for the publication or presentation of legal research papers and legal writing relating to the practice of law, including materials for Continuing Legal Education credit, provided the total remuneration for such work is less than $25,000; or,

    g.    As a member of a bar association or other legal or attorney related ethics, peer review, accreditation, licensing or similar board, committee or organization;

but only if such services are performed as a member of, or on behalf of, the **Named Insured**. **Legal services** do not include the provision of, or failure to provide, any financial or investment advice or financial management.

15. **Malicious code** means the unauthorized corruption of software through the use of computer viruses, Trojan horses, keystroke loggers, cookies, spyware, adware, worms, logic bombs and other coding methods that impair the **Insured's computer system**.

16. **Named Insured** means the person or entity designated as such in the Declarations of this Policy.

17. **Network incident** means a **denial of service attack** on, or the transmission of **malicious code** to, the **Insured's computer system** resulting in:

    a.    an unauthorized user having access to **confidential client information**;

    b.    a **denial of service attack** on a client's **computer system**; or,

    c.    a suspension or interruption to a client's network;

which results in a **claim** from a client for loss.

**Network incident** shall not include any **claim** or loss as a result of an electrical failure, including electrical power interruption, surge, brownout, blackout or interruption, or the failure of the Internet, telephone or other public infrastructure network.

18. **Not-for-profit organization or purpose** means any organization or purpose which is organized and conducted for the public benefit and operated primarily for charitable, civic, educational, religious, or welfare purposes.

19. **Our**, **we**, **us**, **ours** means the insurance company that appears in the Declarations of this Policy.

20. **Personal injury** means injury, including mental anguish and emotional distress, based upon or arising from the provision of **legal services** and involving:

    a.    False arrest, humiliation, detention or imprisonment, wrongful entry or eviction, malicious prosecution, abusive litigation (civil or criminal) or abuse of process; or

    b.    The publication or utterance of a libel, slander, disparagement or other defamatory material or violation of the right to privacy.

21. **Policy period** means the period of time between the inception date and time, and the expiration date and time, each as shown in the Declarations of this Policy, or this Policy's earlier termination date and time, if any.

22.  **Predecessor firm** means any person or entity that was formerly engaged in providing **legal services** but who no longer does so, and to which financial assets and liabilities the **Named Insured** is the majority successor in interest, and that is identified as a **predecessor firm** in the Declarations of this Policy.

23.  **Prior claim** means any **claim** first reported to **us** during the **policy period**, but first made against an **Insured** during the effective dates of a prior policy issued by **us** to the **Named Insured** and continuously renewed up to the present **policy period**.

24.  **Prior known incident** means any same or related **wrongful act**, **legal services**, fact, circumstance or adverse outcome that results in a **claim** being first made against an **Insured** during this **policy period**, and which:

   a.  Is known to an **Insured**;

   b.  Is reasonably apparent to an **Insured** that a **claim** might be made; and,

   c.  Became known to an **Insured** during a prior policy issued by **us** to the **Named Insured** and continuously renewed up to the present **policy period**.

25.  **Privacy incident** means a violation of any **privacy regulation** arising from an act, error or omission in **your** performance of **legal services** for others resulting in **privacy incident expenses**.

26.  **Privacy incident expenses** means reasonable expenses for attorney's fees and costs, consultation with information technology experts, and court costs necessarily incurred by the **Insured** to respond to a formal regulatory inquiry by a governmental body or agency with authority to investigate professional misconduct with regard to a **privacy incident**.

27.  **Privacy regulation** means any state or federal statute, law or regulation associated with the control and use of personally identifiable financial, medical or other sensitive information including, but not limited to, Graham Leach Bliley Act, Health Insurance Portability and Accountability Act, or Health Information Technology for Economic and Clinical Health Act, or any of their extensions or amendments.

28.  **Related claims** means all **claims** based upon or arising from the same or related facts, circumstances, situations, transactions, advice, events, decisions or **wrongful acts** or in connection with the same or related series of facts, circumstances, situations, transactions, advice, events, decisions or **wrongful acts**.

29.  **Service provider** means a business that provides computer-based services to the **Named Insured** with respect to the **Insured's computer system**.

30.  **Wrongful act** means any actual or alleged negligent act, error or omission in the performance of **legal services**, or **personal injury** in the performance of such **legal services**, for others by **you**.

31.  **You**, **your** or **Insured** means:

   a.  The **Named Insured** and any **predecessor firm** specifically named in the Declarations of this Policy;

   b.  Any present partner, principal, officer, director, shareholder, or employed lawyer of the **Named Insured**, but only during the performance of **legal services** in the course and scope of their duties on behalf of the **Named Insured**;

   c.  Any past partner, principal, officer, director, shareholder, or employed lawyer of the **Named Insured**, but only while they rendered or failed to render **legal services** in the course and scope of their duties on behalf of the **Named Insured**;

   d.  Any lawyer who acts as Of Counsel or as an independent contractor to the **Named Insured** and is designated as such in the Application and is listed in the **Named Insured's** records as Of Counsel or as an independent contractor at the time of the **wrongful act**, but only during the performance of **legal services** on behalf of the **Named Insured**;

   e.  Any non-lawyer employee or non-lawyer independent contractor of the **Named Insured** whose work is engaged and directed by the **Named Insured**, but only with respect to the furtherance of **legal services** rendered and while acting in the course and scope of their duties on behalf of the **Named Insured**; or,

   f.  The estate, heirs, executors, administrators, assigns and legal representatives of any **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent such **Insured** would otherwise be provided coverage under this Policy.

C.  DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS

1.  Defense of **Claims**

**We** have the right and duty to defend **claims** brought against **you** seeking **damages** to which this Policy applies, even if the **claims** are groundless. However, **we** shall have no duty to defend **claims** brought against **you** seeking **damages** or asserting **claims** not covered by this Policy. When **we** have paid **our** Limits of Liability as provided in the Declarations of this Policy as payment of **damages** or **claim expenses**, or after depositing the remaining Limit of Liability into the registry of a court of competent jurisdiction, **our** obligation to pay any **damages** or **claim expenses**, or to undertake or continue the defense of any **claim** or suit, ends. Upon such payment or deposit, **we** have the right to withdraw from the further defense of the **claim** or suit by tendering the defense of the **claim** or suit to **you**. **You** agree to accept the tender of the defense when **we** withdraw.

2.  Defense Counsel

While **we** welcome **your** input in selecting defense counsel, **we** retain the exclusive right to make that selection. **Our** determination as to the reasonableness of **claim expenses** is conclusive.

3.  Settlement

**We** will not settle a **claim** without **your** consent; however, **you** may not unreasonably withhold such consent. If **you** withhold consent to any settlement that **we** recommend, then **our** liability for the **claim** will not exceed the amount for which the **claim** could have been settled, plus **claim expenses** incurred up to the date of **your** refusal to consent. When total **claim expenses** and **damages** reach the amount for which the **claim** could have been settled, plus **claim expenses** incurred up to the date of **your** refusal to consent, **we** have no further liability for **claim expenses** or **damages** and have the right to withdraw **our** defense of the **claim**. **You** agree to accept the tender of the defense when **we** withdraw.

**You** shall not settle or offer to settle any **claim**, incur any **claim expenses**, enter into a tolling agreement, or otherwise assume any contractual obligation, or admit any liability with respect to any **claim** without **our** prior written consent. **We** shall not be liable for any settlement, **damages**, **claim expenses** or assumed obligations or admissions for which **we** have not given **our** prior written consent.

4.  Collaborative Defense

**Your** deductible as provided in the Declarations of this Policy will be reduced by fifty percent (50%) for the relevant **claim** if **we** mutually collaborate with **you** to successfully resolve the **claim** and, as a result of such collaboration, any of the following occurs:

a.  The **claim** is settled or resolved by **us** at mediation before suit is filed at terms and conditions, and for an amount, acceptable to **us**;

b.  The **claim** is settled or resolved at mediation within 365 days after suit is filed at terms and conditions, and for an amount, acceptable to **us**;

c.  The **claim** is settled or resolved as evidenced by a written settlement agreement and within 365 days of the date the **claim** is reported to **us** at terms and conditions, and for an amount, acceptable to **us**; or,

d.  The **claim** is settled or resolved by **us** within **your** deductible as provided in the Declarations of this Policy, including all payments for **damages** and **claim expenses**.

However, the amount of the deductible reduction will not exceed $25,000 for the relevant **claim**.

5.  Pre-**Claim** Investigation Assistance

Prior to a **claim** being made against an **Insured**, **we** may, at **our** sole discretion, investigate and pay costs and expenses that **we** incur resulting from such investigation of a potential **claim**.  In order to qualify for Pre-**Claim** Investigation Assistance under this provision, potential **claims** must be otherwise covered under the terms and conditions of the Policy.

6.  Subpoena Assistance

a.  In the event **you** receive a subpoena for documents or testimony arising out of **legal services** rendered by **you**, and **you** request assistance from **us** by providing **us** with a copy of the subpoena, **we** will retain an attorney:

(1)   to assist **you** regarding the production of documents and the preparation of **your** sworn testimony; and,

(2)   to attend and represent **you** at **your** deposition.

b.   However, in order for coverage to apply under this provision, **you**:

(1)   must not be a party to the action out of which the subpoena arises;

(2)   must have not been retained to provide an opinion, advice or testimony in connection with such action;

(3)   must report the subpoena to **us** no later than three (3) business days from receipt of service, or if not possible, as soon as practicable, and in no event later than the day prior to the subpoena response due date; and,

(4)   must provide **us** with any information and documents **we** reasonably request.

**We** will pay **claim expenses** incurred as the result of work performed by the attorney hired pursuant to this section.

7.   Supplementary Payments

The most **we** will pay for all Supplementary Payments payable under this Section is $150,000 per **policy period**, regardless of the number of Supplementary Payments sought or number of claimants or **insureds** involved. Payments made pursuant to this provision of the Policy are not part of and do not erode the Limits of Liability set forth in the Declarations and are not subject to the Deductible. Supplementary Payments will be made only for the following:

a.   Loss of Earnings

If **we** request in writing that **you** attend a trial, hearing or arbitration proceeding in connection with the defense of a **claim**, **we** will reimburse **you** up to $500 per day for **your** actual lost earnings and expenses for such attendance for each day or part of a day **you** attend. The most **we** will pay under this subsection is $10,000 per **claim** defended by **us,** and $50,000 in the aggregate for all **claims** defended by **us** during the **policy period**. **You** must seek payment of any loss of earnings in writing and submit proof of **your** lost earnings or expenses in a form acceptable to **us** within ninety (90) days of such attendance.

b.   Defense of **Disciplinary Proceedings**

**We** will provide for the defense of any **disciplinary proceeding** brought against **you** during the **policy period** and reported to **us** within thirty (30) days of the **disciplinary proceeding** being brought. Under this provision, **we** will pay reasonable **disciplinary proceeding expenses** up to a maximum of $25,000 per **disciplinary proceeding** and $100,000 in the aggregate per **policy period** regardless of the number of **Insureds** involved in **disciplinary proceedings**, or the number of **disciplinary proceedings** brought against **you** during the **policy period**. **You** shall not incur any **disciplinary proceeding expenses** without **our** prior written consent. **We** shall not be liable for any settlement or **disciplinary proceeding expenses** or assumed obligations or admissions for which **we** have not given **our** prior written consent. When **we** have paid the maximum amount of **disciplinary proceeding expenses** provided under this provision, **our** obligation to pay any **disciplinary proceeding expenses**, or to undertake or continue the defense of any **disciplinary proceeding**, ends. Upon such payment, **we** have the right to withdraw from the further defense of the **disciplinary proceeding** by tendering the defense of the **disciplinary proceeding** to **you**. **You** agree to accept the tender of the defense when **we** withdraw.

c.   **Crisis Event Expenses**

**We** will reimburse **you** up to $25,000 for all **crisis event expenses you** incur as a result of any and all **crisis events** that first occur during the **policy period**, and which are reported to **us** during the **policy period** or within sixty (60) days thereafter.  Under this subsection, the most **we** will pay is $25,000 in the aggregate for all **crisis event expenses** incurred as the result of a **crisis event** occurring during the **policy period**, regardless of the number of **crisis events**, claimants or **insureds** involved. Under no circumstance will **we** have a duty to defend any **Insured** under this provision. **Our** obligation to reimburse **you** for **crisis event expenses** is expressly made contingent upon **you** submitting **your** request for reimbursement along with proof of **your** loss in a form acceptable to **us** within sixty (60) days of when the expense or payment was incurred.

d.    **Privacy Incident**

**We** will reimburse **you** up to $25,000 for all **privacy incident expenses you** incur as a result of any and all **privacy incidents** that first occur during the **policy period**, and which are reported to **us** during the **policy period** or within sixty (60) days thereafter.  Under this subsection, the most **we** will pay is $25,000 in the aggregate for all **privacy incidents expenses** incurred as the result of a **privacy incident** occurring during the **policy period**, regardless of the number of **privacy incidents**, claimants or **Insureds** involved. Under no circumstance will **we** have a duty to defend any **Insured** under this provision. **Our** obligation to reimburse **you** for **privacy incident expenses** is expressly made contingent upon **you** submitting **your** request for reimbursement along with proof of **your** loss in a form acceptable to **us** within sixty (60) days of when the expense or payment was incurred.

D.    LIMITS OF LIABILITY AND DEDUCTIBLE

1.    Limit of Liability – Per **Claim**

The most **we** will pay for all **damages** and **claim expenses** for each **claim** first made against the **Insured** and reported to **us** in writing during the **policy period** shall not exceed the Per **Claim** Limit of Liability set forth in the Declarations as the Per **Claim** Limit of Liability, regardless of the number of **claims** or **related claims** made, causes of actions asserted, or number of claimants or **Insureds** involved.

2.    Limit of Liability – Aggregate

The most **we** will pay for **damages** and **claim expenses** for all **claims** first made against the **Insured** and reported to **us** in writing during the **policy period** shall not exceed the amount stated in the Declarations as the Aggregate Limit of Liability, regardless of the number of **claims** or **related claims** made, causes of actions asserted, or number of claimants or **Insureds** involved.

3.    **Claim Expenses**

**Claim expenses we** pay are a part of, and not in addition to, the Limits of Liability, and payment by **us** of **claim expenses** shall reduce and may exhaust the Limits of Liability.

4.    Deductible

**You** are obligated to pay all **claim expenses** and **damages** up to the amount of the deductible shown in the Declarations for each and every **claim**.  However, the first $25,000 of **claim expenses** shall not be subject to the deductible and will be paid directly by **us**.  The deductible shall be payable by **you,** as **claim expenses** in excess of $25,000 are incurred or as **damages** are paid. The amount of the deductible is within and reduces both the Per **Claim** and Aggregate Limits of Liability. Payment of the deductible shall be made by **you** within thirty (30) days of **our** demand for payment.

5.    **Related Claims**

All **related claims** will be treated as a single **claim** and subject to the Per **Claim** Limit of Liability stated in the Declarations of this Policy and will be deemed to have been made at the time the first of such **related claims** was made. Neither the making of a **claim** against multiple **Insureds**, the making of multiple **claims**, nor the making of **claims** by multiple people or entities, shall operate to increase either the Per **Claim** Limit of Liability or the Aggregate Limit of Liability under this Policy.

6.    Multiple Policies Issued by **Us**

If more than one lawyers' professional liability policy issued by **us**, or by a past, present or future parent, subsidiary or affiliate of **ours**, applies to the liability of an **Insured**, **we** shall not be liable for payment of **damages** and **claim expenses** under more than one policy. Any duty to pay **damages** and **claim expenses** shall be confined to the policy containing the largest applicable limit.  If the limit of liability on each policy is the same, only one limit will apply.

E.    EXCLUSIONS

This Policy does not apply to:

1.  Any **claim** or request for Supplementary Payments based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any of the following:

    a.  Any malicious or intentional act or abuse of process;

    b.  Any dishonest or fraudulent act;

    c.  Any willful or criminal violation of any law, statute or regulation; or,

    d.  Any libel or slander committed with knowledge of its falsity.

    However, **we** will defend and pay **claim expenses** or **disciplinary proceeding expenses** for such allegations only if the **claim** or **disciplinary proceeding** is otherwise covered by this Policy, and until there is a final adjudication, judgment, order or ruling by a court or administrative body, or binding arbitration decision or conviction against an **Insured**, or a written document, legal admission or statement by an **Insured** establishing such conduct set forth in this exclusion, or a plea of *nolo contendere* or no contest regarding such conduct set forth in this exclusion. Once such conduct set forth in this exclusion is established as described above, **we** have the right to withdraw from the defense of the **claim** or **disciplinary proceeding**, the **Insured** shall reimburse **us** for all **claim expenses** or **disciplinary proceeding we** incurred defending the conduct set forth in this exclusion, and **we** will have no further liability for **claim expenses** or **disciplinary proceeding** or **damages**. **You** agree to accept the tender of the defense when **we** withdraw.

    Whenever coverage under this provision would be excluded, suspended or lost because of such conduct set forth in this exclusion by any **Insured**, **we** agree that such coverage, as would otherwise be afforded under this Policy, shall be applicable with respect to an **Insured** who did not personally participate, or personally acquiesce in or remain passive after having personal knowledge of such conduct.

2.  Any **claim** or request for Supplementary Payments based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any of the following:

    a.  Any **Insured's** services or capacity as an officer, director, partner, trustee, manager, owner, or employee of a corporation, partnership, association, trust or fund, including a pension, welfare, profit sharing, mutual or investment fund or trust, or any other business enterprise or charitable organization of any kind other than the **Named Insured**, except for **your** services as a court appointed trustee or as an officer, director or member of any non-profit professional legal association, its governing board, or any of its committees;

    b.  Any **Insured's** services or capacity as a public official or employee of a governmental body, subdivision or agency, except however for a **claim** or **disciplinary proceeding** brought by a governmental agency, body or subdivision as a client of the **Named Insured** that is based upon or arises solely from the performance of **legal services** by an **Insured** to the governmental agency, body or subdivision, but only if such services are performed as a member of or on behalf of the **Named Insured**;

    c.  Any **Insured's** actual or alleged liability under any oral or written contract or agreement, unless such liability would have attached to the **Insured** by law in the absence of such contract or agreement;

    d.  **Legal services** provided by an individual or entity with whom the **Insured** shares office space, staff, letterhead, facilities or equipment, who is not an **Insured** under this Policy;

    e.  Any **Insured's** actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, or the Pension Protection Act of 2006, including any amendments, or any rules, regulations or orders issued pursuant to the above-listed acts, or any similar provisions of any state, federal, or local statutory law or common law anywhere in the world;

    f.  Any loss sustained by an **Insured,** or **claim** or **disciplinary proceeding** made by or against an **Insured,** as beneficiary or distributee of any trust or estate;

    g.  Any bodily injury, pain and suffering, sickness, disease or death of any person, or for the destruction, diminution in value or loss of any property or asset, accounts, or of software, data or other information in electronic form, except that the exclusion shall not apply to mental anguish or emotional distress based upon or arising from **personal injury**;

    h.  Any **Insured's** conversion, misappropriation, embezzlement, commingling, defalcation or ethically improper use of or disposal of funds or other property, whether held on behalf of clients or third parties;

i.    Any loss sustained or **claim** or **disciplinary proceeding** made by or on behalf of an **Insured** under this Policy against any other **Insured** including, but not limited to, any loss, **claim** or **disciplinary proceeding** arising out of the formation or dissolution of the **Named Insured**, a **predecessor firm**, or other law firm involving any **Insured**, or to the proprietorial rights of any **Insured** or former **Insured** to clients, information, client lists, documents, files or client matters, or arising from a **network incident** or **privacy incident**;

j.    Any actual or alleged discrimination, harassment or failure to comply with any law because of race, color, religion, age, sex, disability, pregnancy, national origin, sexual orientation, gender identity, marital status, or any other basis prohibited by law;

k.    Any **legal services** rendered or that should have been rendered by **you** with respect to a **controlled enterprise**;

l.    Any **Insured's** financial or investment advice, prediction, warranty, guarantee, opinion, referral or action relating to portfolio or trust account management, the performance of real estate, securities or other investments, or the promotion, sale or solicitation for sale, of securities, real estate or other investments;

m.    Any **Insured's** actual or alleged notarized certification or acknowledgement of a signature on a document in their capacity as a notary public when such **Insured** did not witness the signature being placed on the document;

n.    The loss or destruction, or any diminution in the value of any asset in **your** care, custody or control, or out of the misappropriation of, or failure to give an account of, any asset in **your** care, custody or control, including the commingling of funds;

o.    **Your** failure to implement, update and maintain **commonly accepted technologies**; or

p.    Any **network incident** or **privacy incident** arising from or in connection with any act, error or omission of any person or entity other than an **Insured**.

F.    CONDITIONS

1.    Notice of **Claims**

**You**, as a condition precedent to **our** obligations under this Policy, shall immediately give written notice to **us** during the **policy period** of any **claim** made against **you** or of **your** receipt of any notice, summons, complaint or other process, that any person or entity intends to hold **you** responsible for any **wrongful act**, with full particulars, including but not limited to:

a.    All reasonably obtainable information relating to the time, place and circumstance of the **wrongful act**;

b.    The dates and persons involved;

c.    The identity of anticipated or possible claimants;

d.    The identity of all **Insureds** implicated; and,

e.    The circumstances by which an **Insured** first became aware of the **claim**.

2.    Notice of Potential **Claims**

If, during the **policy period**, **you** become aware of any **wrongful act** or circumstance that might reasonably be expected to be the basis of a **claim** against **you**, such potential **claim** or **wrongful act** will not constitute a **claim** and will not be covered under this Policy unless **we** receive written notice of such potential **claim** in accordance with the terms and conditions of this Policy, and the reasons for anticipating a **claim**, with full particulars, including but not limited to:

a.    All reasonably obtainable information relating to the time, place and circumstance of the **wrongful act**;

b.    The dates and persons involved;

c.    The identity of anticipated or possible claimants;

d.    The identity of all **Insureds** implicated; and,

e.    The circumstances by which an **Insured** first became aware of the potential **claim**.

If a potential **claim** is properly reported pursuant to the requirements of this provision, then any **claim** subsequently made against an **Insured** based upon or arising from such **wrongful act** or circumstance shall be deemed, for purposes of this Policy, to have been made during the **policy period** or any applicable extended reporting period, in which such potential **claim** was first reported.

3.  Premium Payment

    **Our** obligation to perform any duty under the Policy is strictly conditioned upon the payment of the premium when due. Similarly, **our** obligation to perform any duty pursuant to a renewal of coverage provided under the Policy shall be strictly conditioned upon the payment of the renewal premium when due. Therefore, this Policy shall not be deemed to have been issued, delivered, or renewed and shall not be applicable to any matter which would otherwise be covered herein, until:

    a.  The premium has been paid in full; or,

    b.  If **we** have agreed to finance the Policy, the first installment has been paid in full.

    If payment is made by check, electronic transfer or money order, it shall not be considered "paid in full" until honored by the payor's bank.

4.  Cooperation and Subrogation

    a.  **You** agree to cooperate with **us** and assist **us** in the investigation, defense and settlement of any and all **claims,** potential **claims** and requests for Supplementary Payments, including but not limited to, promptly providing complete and accurate information which **we** may reasonably require, attending any deposition, hearing or trial as requested by **us**, assisting in securing and giving testimony, obtaining the attendance of witnesses, and doing nothing to prejudice **our** ability to investigate, defend or settle any **claim** or **disciplinary proceeding** to which this Policy applies.

    b.  If **we** request, **you** agree to submit to any examination under oath that **we** may require, to be conducted by **our** representatives at a time and place of **our** choosing.

    c.  **You** agree to follow **our** recommendation regarding whether or not to arbitrate or mediate a **claim** and shall not agree to arbitrate or mediate a **claim** without **our** prior written consent.

    d.  In the event of any payment under this Policy, **we** shall be subrogated to all **your** rights of recovery against any person or organization, including any rights **you** may have against any other **Insured** who personally participated in or personally acquiesced in or remained passive after having knowledge of any dishonest, intentionally wrongful, fraudulent, criminal, or malicious act or omission. **You** shall execute and deliver instruments and papers and do whatever else is necessary to secure and collect upon such rights. **You** shall do nothing to prejudice such rights.

    e.  After deducting any costs or expenses incurred in obtaining recoveries under this section, the amount recovered shall be applied:

        (1)  first, to the **Insured** in reimbursement of any deductible;

        (2)  second, to **us** for reimbursement of any amount paid under the Policy; and,

        (3)  third, shared equally between the **Insured** and **us** for reimbursement of amounts incurred as a result of the **claim**.

5.  Action against **Us**

    No action may be taken against **us** unless, as a condition precedent, **you** have fully complied with all terms and conditions of this Policy and the amount of **damages** has been finally determined by the entry of judgment or by the written agreement between the **Insured**, the claimant and **us**. No person or entity shall have any right under this Policy to join **us** as a party to any action against the **Insured** to determine such **Insured's** liability, nor shall **we** be joined as a party or interpleaded by the **Insured** or the legal representatives of the **Insured** unless otherwise mandated by law.

6.  Assignment

    Neither this Policy nor any **Insured's** interest in this Policy may be assigned or transferred without **our** prior written consent. However, if the **Insured** is a person and dies, the coverage afforded by this Policy shall inure to the benefit of the deceased **Insured's** estate.

                    © 2016 Attorney Protective. All rights reserved.

7. Policy Territory

This Policy applies to a **wrongful act** taking place anywhere in the world, provided that the **claim** is made and suit is brought against the **Insured** within the United States of America, its territories or possessions, Puerto Rico or Canada.

8. Material Change

a. The **Named Insured** shall immediately, but in no event later than thirty (30) days, report to **us** in writing any material change that occurs during the **policy period**.  In each case of a material change, **we** shall have the right to decline coverage, or to accept or alter coverage and charge an additional premium for the material change. This Policy shall provide no coverage with respect to any **claim** made against any **Insured** where a material change has occurred, or based upon or arising from any **wrongful act** committed or allegedly committed on or subsequent to the time and date of any acquisition, merger or dissolution if **we** have not been notified of such material change.

b. A material change includes, but is not limited to, the following:

(1) A twenty-five percent (25%) increase or decrease in the total number of attorneys covered in this Policy as represented in the Application;

(2) Any mergers, acquisitions, spin-offs, dissolutions or splits involving the **Named Insured**; however, the **Named Insured** must provide written notice to **us** prior to the completion of this activity;

(3) Financial impairment of the **Named Insured**, including but not limited to the appointment of a receiver, conservator, liquidator, or trustee for the **Named Insured**, or if the **Named Insured** has become a debtor in possession under bankruptcy laws;

(4) When any lawyer joining the **Named Insured** during the **policy period** is aware of any **claim** or potential **claim** that had been alleged against that lawyer prior to joining the **Named Insured**; or,

(5) When any lawyer joining the **Named Insured** during the **policy period** is subject to any **disciplinary proceeding** by any court or bar association or has been reprimanded, censured or disbarred or prohibited from practicing law in a specific area before any court or administrative agency.

9. Other Insurance

The insurance provided for in this Policy shall be excess over all other valid and collectible insurance, whether such insurance is stated to be primary, contributory, excess, umbrella, contingent or otherwise.  In no event shall **we** be responsible under this Policy for a greater proportion of such **damages** and **claim expenses** than the Limit of Liability under this Policy bears to the total limits of liability under all applicable insurance issued by all companies unless such other insurance is specifically purchased to apply in excess of the Limits of Liability of this Policy.

10. Waiver

**Our** failure to insist on strict compliance with any of the terms, provisions or conditions of this Policy, or the failure to exercise any provision, right or privilege under this Policy, shall not operate as, nor be construed as, a waiver or change to any provision of this Policy. None of the provisions of this Policy will be waived, changed or modified unless made by written endorsement to this Policy and signed by **our** authorized representative.

11. Cancellation and Nonrenewal

a. This Policy may be canceled by the **Named Insured** by providing written notice to **us**. The cancellation shall be effective on the date specified by the **Named Insured** or the date the notice is received by **us**, whichever is later.

b. If **we** cancel this Policy, the earned premium shall be computed pro rata. If the **Named Insured** cancels this Policy, the Policy premium will be the amount calculated in accordance with the standard short rate tables and procedures.  Premium adjustments shall be made within a reasonable period of time after cancellation.

c. If **we** cancel or non-renew this Policy for any reason other than non-payment of premium, **we** shall provide written notice to the **Named Insured** not less than thirty (30) days prior to the effective date of the

cancellation or non-renewal. If **we** cancel this Policy for non-payment of premium, **we** shall provide written notice to the **Named Insured** not less than ten (10) days prior to the effective date of the cancellation.

d.    If **we** cancel or non-renew this Policy, coverage under this Policy shall terminate on the earlier of:

(1)    The date and time stated on the cancellation or non-renewal notice; or,

(2)    The date and time the **Named Insured** secures replacement coverage.

e.    All notices given under these provisions by **us** will be sent by U.S. mail to the **Named Insured** at the address last known to **us** and shall be effective to cancel or non-renew this Policy for all **Insureds**.

f.    The offering of renewal terms and conditions different from the expiring terms and conditions shall not constitute a non-renewal.

12.    Entire Contract

By acceptance of this Policy **you** agree that:

a.    All of the information, Applications, supplements, addendums and statements provided to **us** by the **Named Insured** are true, accurate and complete and shall be deemed to constitute material representations made by each and all of the **Insureds**;

b.    This Policy is issued in reliance upon the **Named Insured's** information, Applications, supplements, addendums, and statements;

c.    This Policy and all its endorsements, together with the completed and signed Application and any and all information, Applications, supplements, addendums and statements provided by **you** to **us** are deemed to be incorporated into this Policy and embody all of the agreements existing between **you** and **us** and shall constitute the entire contract between **you** and **us**; and,

d.    The misrepresentation of any material matter by **you** or **your** agent, whether in the Application or otherwise, will render this Policy null and void and relieve **us** from all duties and liability under this Policy.

13.    **Named Insured** as Sole Agent

The **Named Insured** shall be the sole agent of all **Insureds** under this Policy for the purpose of effecting or accepting any notices under this Policy, any amendments to or cancellation of this Policy, for the completing of any Applications and the making of any statements, representations and warranties, for the payment of any premium and the receipt of any return premium that may become due under this Policy, and the exercising or declining to exercise any rights under this Policy.

14.    Economic Sanctions

Payments under this Policy shall be made only in full compliance with all United States economic or trade sanction laws or regulations including, but not limited to, sanctions, laws and regulations administered and enforced by the United States Treasury Department's Office of Foreign Assets Control.

## G.    AUTOMATIC EXTENSION OF TIME TO REPORT **CLAIMS**

Commencing upon the cancelation or nonrenewal of this Policy by either the **Named Insured** or **us**, **we** will provide an automatic extension of sixty (60) days to the **Named Insured** to report any **claims** that were first made against an **Insured** during the **policy period**.  However, if the **Named Insured** has obtained another policy of lawyers professional liability insurance that covers **claims** that would otherwise be reported to **us** during the automatic extension period, this provision will not apply.

This automatic extension shall not extend the **policy period** or change the scope of coverage provided. Any **claim** first reported to **us** during the automatic extension will be deemed to have been made on the last day on which this Policy is in effect. The Limits of Liability that apply at the end of the **policy period** are not reinstated, renewed or increased for **claims** first reported during the automatic extension of sixty (60) days.

## H.    EXTENDED REPORTING PERIODS

1.    Terms and Conditions Applicable to All Extended Reporting Periods

a.  If this Policy is canceled or non-renewed by the **Named Insured** or **us** for any reason, or if an **Insured** is otherwise eligible for an extended reporting period option as set forth in sections H.2. or H.3. below, **we** shall, upon written request of the **Named Insured**, make an offer of an extended reporting period for the terminated coverage, subject to the following terms and conditions:

    (1)  The **Named Insured** must make the request to **us** in writing, and pay the additional premium, if any, within sixty (60) days of cancellation or non-renewal of this Policy, or in the alternative, within the time periods set forth for the extended reporting period options under H.2. or H.3. below; and,

    (2)  Any extended reporting period, and all **claims** reported thereunder, shall be subject to all terms and conditions of this Policy.

b.  Any extended reporting period:

    (1)  Must be evidenced by an endorsement issued by **us** in writing;

    (2)  Will provide the **Named Insured** with an additional period of time as set forth in the endorsement to report **claims** first made or brought against an **Insured** during the **policy period** or during the extended reporting period;

    (3)  Shall not constitute a new policy;

    (4)  Shall not reinstate, increase or renew the Limits of Liability, and such limits shall be a part of, and not in addition to, the Limits of Liability for the **policy period**; and,

    (5)  Shall cover only those **claims** based upon or arising from **wrongful acts** committed by an **Insured** after the Policy retroactive date and before the end of the **policy period**.

c.  The right to any extended reporting period endorsement is expressly extinguished if:

    (1)  Any amount payable to **us** under the Policy has not been paid in accordance with the terms of payment, including the failure to pay any premiums when due, or the failure to timely pay deductible amounts due and owing;

    (2)  Any **Insured** made material misrepresentations in the Application, supplements, addendums or attachments to the Application or to underwriting inquiries;

    (3)  At the time this option could be exercised, the relevant **Insured** was not licensed to practice law, or had his or her license revoked, suspended or surrendered for any reason; or,

    (4)  There is or was any material noncompliance by an **Insured** with any of the terms or conditions of this Policy.

2.  Non-Practicing Extended Reporting Period – Additional Terms & Conditions

Upon the total and permanent retirement or cessation of the full-time or part-time practice of law, an **Insured** may be eligible for an extended reporting period endorsement, subject to the following terms and conditions:

a.  The relevant **Insured** retired or ceased the full-time or part-time practice of law, or leaves the private practice of law to become a state or federal judge, during the **policy period**;

b.  The relevant **Insured** was, at the time this option could be exercised, a partner, principal, officer, director, shareholder or employed lawyer, other than an independent contractor, who was paid under a regular payroll schedule or firm distribution and had federal and state (if applicable) taxes withheld by **Named Insured**;

c.  The **Named Insured** was insured by **us** for at least three (3) consecutive years prior to the request for the Non-Practicing Extended Reporting Period and the relevant **Insured** was employed by the **Named Insured** for those same three (3) years;

d.  The relevant **Insured** notifies **us** in writing of their retirement or cessation of the practice of law and intent to exercise this option within sixty (60) days of date the relevant **Insured** retires or ceases the practice of law, or at the end of the **policy period**, whichever comes first; and,

e.  Coverage provided under the Non-Practicing Extended Reporting Period will cease immediately upon an **Insured's** resumption of full or part time practice of law.  However, **Insureds** performing voluntary or uncompensated **legal services** on a full or part-time basis for or on behalf of **not-for-profit**

**organizations or purposes** will be considered retired for the purpose of retaining their Non-Practicing Extended Reporting Period under this subsection so long as such **Insureds** have otherwise ceased the practice of law, provided no other **legal services**, and are not compensated in any way (not including reimbursement for actual costs or expenses related to the uncompensated representation) for providing the **legal services**. Such voluntary **legal services** are not covered by the Non-Practicing Extended Reporting Period as set forth in Section H. Receipt of free office space or supplies or provision of health care or other benefits in exchange for **legal services** is considered to be compensation for **legal services**.

3.  Death or Permanent Disability Extended Reporting Period - Additional Terms & Conditions

    Upon the death of an **Insured** or when an **Insured** becomes totally and permanently disabled, the relevant **Insured** may be eligible for an extended reporting period endorsement of up to five (5) years for no additional payment of premium under the following terms and conditions:

    a.  The relevant **Insured** died or became totally and permanently disabled during the **policy period**, and the death or disability was not the result of suicide, drug or alcohol abuse, or an intentionally self-inflicted wound;

    b.  The relevant **Insured** was, at the time this option could be exercised, a partner, principal, officer, director, shareholder or employed lawyer, other than an independent contractor, who was paid under a regular payroll schedule or firm distribution and had federal and state (if applicable) taxes withheld by **Named Insured**;

    c.  The **Named Insured** was insured by **us** for at least three (3) consecutive years prior to the request for the extended reporting period;

    d.  Within sixty (60) days of the death or total and permanent disability, or within thirty (30) days of the end of the **policy period**, whichever comes first, the relevant **Insured** or their legal representative notifies **us** in writing of the death or disability, provides evidence satisfactory to **us** of such death or disability, and requests this extended reporting period endorsement; and,

    e.  The extended reporting period endorsement expires upon the expiration of five (5) years, or the date the estate is discharged, or the date the relevant **Insured** is no longer totally and permanently disabled, whichever comes first.

4.  Premium for Extended Reporting Periods

    a.  The additional premium for an extended reporting period endorsement other than the Non-Practicing, Death or Permanent Disability options, shall be based upon the premium of the expiring Policy as follows:

        (1)  One hundred percent (100%) of the annual premium for a one-year extended reporting period;

        (2)  One hundred fifty percent (150%) of the annual premium for a two-year extended reporting period;

        (3)  One hundred seventy-five percent (175%) of the annual premium for a three-year extended reporting period;

        (4)  Two hundred twenty-five percent (225%) of the annual premium for a six-year extended reporting period; or,

        (5)  Two hundred fifty percent (250%) of the annual premium for an unlimited extended reporting period.

    b.  No additional premium is due for a Non-Practicing Extended Reporting Period endorsement issued pursuant to H.2 above, for up to an unlimited duration.

    c.  No additional premium is due for a Death or Disability Extended Reporting endorsement issued pursuant to H.3 above, for a period of up to five (5) years in duration.

    d.  Any premium paid to **us** for an extended reporting period endorsement is non-refundable.

© 2016 Attorney Protective. All rights reserved.

**IN WITNESS WHEREOF, we** have caused this Policy to be signed by **our** president and secretary and countersigned where required by law on the Declarations page by **our** duly authorized representative.

President                                                          Secretary

**Issuing Company:**
**National Liability & Fire Insurance Company**
**Stamford, Connecticut**

**AGGREGATE DEDUCTIBLE ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of the payment of premium, it is understood and agreed that the following endorsement is attached to and modifies the Policy.

Paragraph number 4 of Section D., LIMITS OF LIABILITY AND DEDUCTIBLE, of the Policy is deleted and replaced with the following:

4.    Deductible

**You** are obligated to pay all **claim expenses** and **damages** up to the Per **Claim** Deductible amount shown in the Declarations for each and every **claim**.  However, the first $25,000 of **claims expenses** shall not be subject to the deductible and will be paid directly by **us**. The most **you** will pay for all **damages** and **claim expenses** as deductible under this Policy shall not exceed the amount stated in the Declarations as the Aggregate Deductible. The deductible shall be payable by **you,** as **claim expenses** in excess of $25,000 are incurred or as **damages** are paid. Payment of the deductible shall be made by **you** within thirty (30) days of **our** demand for payment.

**All other terms and conditions of the Policy remain unchanged.**

ATY-1012-00-0116                    Page 1 of 1            © 2016 Attorney Protective. All rights reserved.

**Issuing Company:**
**National Liability & Fire Insurance Company**
**Stamford, Connecticut**

## SECURITIES EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of the premium paid, it is understood and agreed that the following endorsement is attached to and modifies the Policy.

The following exclusions are added to paragraph 2 of Section E., EXCLUSIONS, of the Policy:

An act, error or omission in the performance of **legal services** by any **Insured** related to the following:

a.    The Securities Act of 1933, the Securities Exchange Act of 1934; the Public Utility Holding Company Act of 1935, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisors Act of 1940;

b.    Any federal, state, local or foreign statute or common law relating to the registration, issuance, sale, purchase or offer of, or solicitation of an offer to sell or purchase any securities or bonds of any kind;

c.    Any rule, regulation, or amendment relating to any of the statutes or regulations in a. or b. above;

d.    Any common law interpretation of any of the statutes or regulations in a. or b. above; or,

e.    Any registration, issuance, sale, purchase or offer of, or solicitation of any offer to sell or purchase, any securities or bonds of any kind.

**All other terms and conditions of this Policy remain unchanged**.

**Issuing Company:**
**National Liability & Fire Insurance Company**
**Stamford, Connecticut**

## ECONOMIC SANCTIONS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of the payment of premium, it is understood and agreed that the following endorsement is attached to and modifies the Policy.

The following exclusion is added to paragraph 2 of Section E., EXCLUSIONS, of the Policy:

Where coverage for such **claim** or Supplementary Payments would result in violation of any U.S. economic trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control. Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance, or any **claim** or Supplementary Payments that would be in violation of U.S. economic or trade sanctions as described above shall be null and void.

**All other terms and conditions of the policy remain unchanged.**

**Issuing Company:**
**National Liability & Fire Insurance Company**
**Stamford, Connecticut**

## TEXAS AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of payment of premium, it is understood and agreed that the following endorsement is attached to and modifies the Policy.

Condition 11. of Section F., CONDITIONS, of the Policy is deleted in its entirety and replaced with the following:

11.    Cancellation and Nonrenewal

    a.    This Policy may be canceled by the **Named Insured** by providing written notice to **us**. The cancellation shall be effective on the date specified by the **Named Insured** or the date the notice is received by **us**, whichever is later.

    b.    **We** may cancel the Policy for any reason during the first sixty (60) days of the **policy period** with at least ten (10) days prior written notice stating the reason(s) for such cancellation, but only if the Policy is within the initial policy term.

    c.    If the Policy has been in effect for more than sixty (60) days, or if it is a renewal policy issued by **us**, **we** may only cancel the Policy with at least ten (10) days written notice, stating the reason(s) for such cancellation, for one or more of the following reasons:

        (1)    Fraud in obtaining coverage;

        (2)    Failure to pay premiums when due;

        (3)    An increase in hazard within the control of the **Named Insured** that would produce a rate increase;

        (4)    Loss of **our** reinsurance covering all or part of the risk covered by the Policy; or,

        (5)    If **we** are placed in supervision, conservatorship, or receivership and the cancellation or nonrenewal is approved or directed by the supervisor, conservator, or receiver.

    d.    If **we** cancel this Policy, the earned premium shall be computed pro rata. If the **Named Insured** cancels this Policy, the Policy premium will be the amount calculated in accordance with the standard short rate tables and procedures.  Premium adjustments shall be made within a reasonable period of time after cancellation.

    e.    If **we** elect to nonrenew the Policy, **we** will mail written notice to the **Named Insured** stating the reasons for such nonrenewal at the address last known to **us**, at least sixty (60) days prior to the expiration date of the Policy.  If **we** are placed in supervision, conservatorship or receivership, and **we** elect to nonrenew the Policy with the approval of the supervisor, conservator or receiver, **we** may nonrenew with at least ten (10) days written notice prior to the expiration of the **policy period**.  **We** will be exempt from sending notice of nonrenewal if the basis for such nonrenewal is the transfer of the Policy between admitted companies of the same insurance group.  The nonrenewal notice will state the precise incident, circumstance or risk factors that resulted in the nonrenewal, as well as state the source of the information **we** relied upon to make **our** decision.

    f.    If the notice of nonrenewal is mailed later than sixty (60) days before the date this Policy expires, the coverage under this Policy remains in effect until the sixty-first (61st) day on which the notice is delivered or mailed.  Earned premium for any period of coverage that extends beyond the expiration date of the Policy shall be computed pro rata based upon this Policy's premium rates.

g.   All notices under these provisions shall be delivered or mailed to the first **Named Insured** under the Policy at the last address known to **us**.

Subpart 5 of the Insuring Agreement is deleted and replaced with the following:

5.   As of the **continuous insurance start date** no **Insured** knew or should have known of any same or related **wrongful act**, fact, circumstance or adverse outcome that might reasonably result in the **claim**.

The following definition is added to the Definitions:

**Continuous insurance start date** means the first date that **you** became an **Insured** under a policy of insurance issued by **us** to the **Named Insured** that is continuously renewed by **us** without interruption, up to and including the current **policy period** of this Policy.

The following definitions are deleted from the Definitions:

**Prior claim** means any **claim** first reported to **us** during the **policy period**, but first made against an **Insured** during the effective dates of a prior policy issued by **us** to the **Named Insured** and continuously renewed up to the present **policy period**.

**Prior known incident** means any same or related **wrongful act**, **legal services**, fact, circumstance or adverse outcome that results in a **claim** being first made against an **Insured** during this **policy period**, and which:

a.   Is known to an **Insured**;

b.   Is reasonably apparent to an **Insured** that a **claim** might be made; and,

c.   Became known to an **Insured** during a prior policy issued by **us** to the **Named Insured** and continuously renewed up to the present **policy period**.

**All other terms and conditions of the Policy remain unchanged.**

ATY-9001-TX-0119                    Page 2 of 2           © 2019 Attorney Protective. All rights reserved.

**Issuing Company:**
**National Liability & Fire Insurance Company**
**Stamford, Connecticut**

## TEXAS DECEPTIVE TRADE PRACTICES ACT ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

In consideration of payment of premium, it is understood and agreed that the following endorsement is attached to and modifies the Policy.

Subsection c. of the definition of **damages** of Section B., DEFINITIONS, of the Policy is deleted in its entirety and replaced with the following:

c.    The multiplied portion of multiplied awards, except the multiplied portion of an amount awarded under the Texas Deceptive Trade Practices-Consumer Protection Act.

**All other terms and conditions of this Policy remain unchanged**.