**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NATIONAL LIABILITY & FIRE INSURANCE COMPANY,** | : : | |
| Plaintiffs, | : : | |
| | : | Civil Action |
| v. | : : | No. 24-cv-01749 |
| **MANFRED STERNBERG, ESQUIRE et al.**, | : : | |
| Defendants. | : : : : | |

**MEMORANDUM**

**J. Younge**                                                                                                   **August 1 , 2025**

**I.      INTRODUCTION**

Plaintiff National Liability & Fire Insurance Company ("National") has filed a declaratory judgment action against Defendants Manfred Sternberg and Manfred Sternberg & Associates, PC (collectively "Defendants"), seeking a ruling that National has no duty to defend or indemnify Defendants against claims asserted against them in a pending civil action in the Eastern District of Pennsylvania at Case No. 2:22-cv-00688 (*See* Complaint, ECF No. 1 ("Compl.")). In *American Environmental Enterprises v. Manfred Sternberg et. al.* ("Underlying Action"), the allegations by plaintiffs American Environmental Enterprises, Inc. d/b/a TheSafetyHouse.com ("SafetyHouse") involved claims of fraud in the inducement, fraud, wrongful civil conspiracy, participation theory, unjust enrichment, intentional interference with contractual relations, and intentional interference with prospective economic advantage pursuant to the Complaint within that docket ("Underlying Complaint"). (*See* Compl. at 1-3.) Before the Court is Defendants' Motion to Dismiss Plaintiff National's claims pursuant to Federal Rules of

Civil Procedure 12(b)(6) (Motion to Dismiss, ECF No. 14 ("MTD"))[1]. The Court finds this Motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, said Motion is Denied.

## II.    FACTUAL BACKGROUND

Plaintiff National Liability Fire & Insurance Company issued a Lawyers Professional Liability Policy, with a policy period of October 16, 2021, to October 16, 2022, to named insured Manfred Sternberg & Associates, P.C. (Compl. ¶ 23). This policy contained an insuring agreement stating in relevant part:

> A. INSURING AGREEMENT Subject to all terms and conditions of this Policy, we will pay on your behalf all claim expenses and damages up to the Limits of Liability as set forth in the declarations of this Policy, for a claim to which this Policy applies that is first made against you during the policy period or during a prior policy issued by us and continuously renewed by the Named Insured up to the present policy period. Additionally, the claim must be reported to us during the policy period, or if applicable, reported to us during the sixty (60) day automatic extension of time to report claims. However, our agreement to defend or indemnify you for a claim shall only apply if:
>
> 1. The claim arises from a wrongful act committed by you after the Policy retroactive date and before the Policy expiration date;
>
> 2. The claim arises from an act, error or omission in the performance of legal services by you on behalf of the Named Insured or any predecessor firm;

(Compl. ¶ 25).

The Policy also contains the following definitions:

> 1. Claim means a demand received by you for money or services arising from an act, error or omission in your performance of legal services for others. A claim shall include, but is not limited to, the service of suit or the institution of an arbitration proceeding against the Insured or a request to toll the statute of limitations. Claim does not include a demand for money or services in criminal proceedings of any type brought against an Insured, or in any proceedings that seek injunctive,

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.

declaratory, equitable or non-pecuniary relief or remedies. Claim also means a demand received by you for money or services arising from a network incident.

2. Claim expenses means:
a. Reasonable and customary fees for necessary legal work performed by attorneys designated or approved by us;
b. All other reasonable and necessary fees, costs and expenses approved by us and resulting from the investigation, adjustment, defense and appeal of a claim; and,
c. Premiums for any appeal bond, attachment bond or similar bond in an amount not to exceed the unexhausted Limits of Liability of this Policy, provided that we have no obligation to apply for or furnish any such bond. Claim expenses do not include crisis event expenses, disciplinary proceeding expenses, privacy incident expenses, or salaries or expenses of either your or our employees or attorneys.

… 9. Damages means the amount that an Insured becomes legally obligated to pay as a result of any covered claim including, but not limited to, a monetary judgment, award or settlement, and any interest imposed on such judgment, award or settlement, but does not include:

…

b. Any civil or criminal:
(1) fines, sanctions, penalties, forfeitures;
(2) statutory penalties;
(3) legal fees;
(4) exemplary or punitive damages; or,
(5) awards designed to punish, deter, regulate conduct, fee shift or penalize; imposed or awarded against an Insured or any client of an Insured, whether pursuant to any federal or state law, statute, regulation, ordinance, court rule or case law; …

...

14. Legal services means services provided to others by an Insured in the capacity as:
a. An attorney or notary public;
….
e. An administrator, conservator, executor, guardian, trustee, receiver, or in any similar court appointed fiduciary capacity, provided such services are performed in connection with and incidental to the provision of legal services by the Named Insured; …

…

> 30. Wrongful act means any actual or alleged negligent act, error or omission in the performance of legal services, or personal injury in the performance of such legal services, for others by you.
>
> 31. You, your or Insured means:
> a. The Named Insured and any predecessor firm specifically named in the Declarations of this Policy;
> b. Any present partner, principal, officer, director, shareholder, or employed lawyer of the Named Insured, but only during the performance of legal services in the course and scope of their duties on behalf of the Named Insured;

(Compl. ¶ 26).

As well, the policy contains provisions regarding defending claims against the insured, specifying that:

> 1. Defense of Claims
> We have the right and duty to defend claims brought against you seeking damages to which this Policy applies, even if the claims are groundless. However, we shall have no duty to defend claims brought against you seeking damages or asserting claims not covered by this Policy. . . .

(Compl. ¶ 27).

In the Underlying Action, Safetyhouse has brought forth claims of fraud in the inducement, fraud, wrongful civil conspiracy, participation theory, unjust enrichment, intentional interference with contractual relations, and intentional interference with prospective economic advantage against Defendants. (Compl. ¶ 21). However, the Counts below are the only claims against Defendants:

> Count I states a claim for fraud in the inducement alleging that the Sternberg Defendants and the Gross Defendants deliberately, intentionally, and willfully induced Safetyhouse to purchase Covid-19 test kits by making false representations and promises that the test kits were available for quick sale, and that the purchase price of $1,965,000.00 was wrongfully and prematurely released by the Sternberg Defendants from the escrow account as Safetyhouse was not supplied with a bill of sale and bill of lading per the representations of the Gross Defendants and the Sternberg Defendants. *See* [ECF No]. 1-3 at ¶¶ 65-76.

4

> Count II states a claim for fraud alleging that the Sternberg Defendants and the Gross Defendants deliberately, intentionally, and willfully made false representations to Safetyhouse regarding the availability and ability to sell the Covid-19 test kits to Safetyhouse "**despite their actual knowledge that they did not intend to honor their representations and they lacked the capacity to perform as promised**." *See Id*. at ¶¶ 77-87 (emphasis added).
>
> Count IV states a claim for wrongful civil conspiracy alleging that all defendants each wrongfully conspired with each other to fraudulently induce Safetyhouse "to send them almost two million dollars … **without any intent or capacity to perform the alleged Agreement**." *See Id*. at ¶¶ 96-108 (emphasis added).
>
> Count VII states a claim for participation theory alleging that the Sternberg Defendants and the Gross Defendants made material misrepresentations to obtain the funds and to prevent and delay detection of the fraud, and "**made these representations with knowledge that they were false**." *See Id*. at ¶¶ 117-134 (emphasis added).
>
> Count VIII states a claim for unjust enrichment/quantum meruit alleging that the Sternberg Defendants and the Gross Defendants unjustly enriched themselves at the expense of Safetyhouse by receiving the $1,965,000.00 purchase price of the Covid-19 test kits without Safetyhouse receiving anything in return. *See Id*. at ¶¶ 135-145.
>
> Count IX states a claim for intentional interference with existing contractual relations alleging that all defendants "**took actions with specific intent**" to harm the contractual relationship between Safetyhouse and its customers to whom it intended to ship the Covid19 test kits. *See Id*. at ¶¶ 146-152 (emphasis added).
>
> Count X states a claim for intentional interference with prospective economic advantage alleging that all defendants "**took actions with specific intent**" to harm the contractual relationship between Safetyhouse and its customers to whom it intended to ship the Covid19 test kits. See Id. at ¶¶ 153-159 (emphasis added).

(Memorandum in Opposition, ECF No. 17 at p.12-13).

Plaintiff, National, has been defending Defendants in this Underlying Action with Safetyhouse. (Compl. ¶ 29). Plaintiff then filed for a declaratory judgment that Plaintiff has no duty to defend and no duty to indemnify Defendants against claims asserted against them in Defendants' underlying action with Safetyhouse. (Compl. ¶ 2). To support the declaratory

judgment, Plaintiff relies on Exclusions that exist in Defendants' policy with Plaintiff. (Compl. ¶ 28).

The Exclusions contain provisions providing that the policy does not apply to:

E. Exclusions

This policy does not apply to:

1. Any claim or request for Supplementary Payments based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any of the following:
   a. Any malicious or intentional act or abuse of process;
   b. Any dishonest or fraudulent act;
   c. Any willful or criminal violation of any law, statute or regulation; or,
   d. Any libel or slander committed with knowledge of its falsity.

   However, we will defend and pay claim expenses or disciplinary proceeding expenses for such allegations only if the claim or disciplinary proceeding is otherwise covered by this Policy, and until there is a final adjudication, judgment, order or ruling by a court or administrative body, or binding arbitration decision or conviction against an Insured, or a written document, legal admission or statement by an Insured establishing such conduct set forth in this exclusion, or a plea of nolo contendere or no contest regarding such conduct set forth in this exclusion. Once such conduct set forth in this exclusion is established as described above, we have the right to withdraw from the defense of the claim or disciplinary proceeding, the Insured shall reimburse us for all claim expenses or disciplinary proceeding we incurred defending the conduct set forth in this exclusion, and we will have no further liability for claim expenses or disciplinary proceedings or damages. You agree to accept the tender of the defense when we withdraw.

   Whenever coverage under this provision would be excluded, suspended or lost because of such conduct set forth in this exclusion by any Insured, we agree that such coverage, as would otherwise be afforded under this Policy, shall be applicable with respect to an Insured who did not personally participate, or personally acquiesce in or remain passive after having personal knowledge of such conduct.

2. Any claim or request for Supplementary Payments based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any of the following:

   . . .

>g. Any bodily injury, pain and suffering, sickness, disease or death of any person, or for the destruction, diminution in value or loss of any property or asset, accounts, or of software, data or other information in electronic form, except that the exclusion shall not apply to mental anguish or emotional distress based upon or arising from personal injury;
>
>. . .
>
>h. Any Insured's conversion, misappropriation, embezzlement, commingling, defalcation or ethically improper use of or disposal of funds or other property, whether held on behalf of clients or third parties;
>. . .
>
>n. The loss or destruction, or any diminution in the value of any asset in your care, custody or control, or out of the misappropriation of, or failure to give an account of, any asset in your care, custody or control, including the commingling of funds;

(Compl. ¶ 28).[2]

Plaintiff alleges there is no duty to defend or indemnify because Safehouse's' claims against Defendants in the Underlying Action are excluded claims. (Compl. ¶¶ 35-42). Defendants now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1 for failure to state a claim. (MTD at 1).

### III.     LEGAL STANDARD

The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556

---

[2] When referring to Exclusions for the rest of the Memorandum, the Court will state E.1 to reference Exclusion 1(a) – (d), and the paragraph following it and E.2 to reference Exclusion 2(g, h, and n).

7

U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Thus, this Court must examine Plaintiff's claims to determine whether it can infer that Defendants are liable for the alleged misconduct.

## IV.  DISCUSSION

Pursuant to the Declaratory Judgement Act, 28 U.S.C., §2201 Plaintiff has alleged sufficient facts demonstrating that coverage does not exist for Defendant Manfred Sternberg, to withstand this Motion to Dismiss. Defendants' arguments in support of its motion are based on four primary reasons as to why dismissal is warranted; we will accordingly address each one in order.

### A. Defendant's Motion to Dismiss is not at a Premature Junction when determining if a Duty to Defend Exists

While some jurisdictions have declined to reach the merits of declaratory judgment actions involving insurance coverage at the motion to dismiss stage, case law within the Third Circuit supports a different approach. For instance, in *Babalola v. Donegal Group, Inc.*, the Middle District of Pennsylvania addressed whether the defendant breached the terms of a homeowner's insurance policy that plaintiff purchased from them. *Babalola v. Donegal Grp., Inc.*, No. 08621, 2008 U.S. Dist. LEXIS 65207, at *5-6 (M.D. Pa. Aug. 26, 2008). In that case, the plaintiff alleged that defendant wrongfully refused to defend them in an underlying case also before that Court. *Id*. The Court analyzed the defendant's motion to dismiss on the merits and concluded that the insurance group had no duty to defend. Likewise, in *Hiscox Ins. Co. v. MRB Lawn Servs.*, the Eastern District of Pennsylvania considered a declaratory action involving an

8

insurance dispute with an underlying pending tort action in state court. *Hiscox Ins. Co., Inc. v. MRB Lawn Servs.*, No. 22-2827, 692 F. Supp. 3d 486 , 2023 U.S. Dist. LEXIS 164019 , 2023 WL 6050221 , at * 8 (E.D. Pa. Sept. 15, 2023). There, the insurer argued that policy exclusions barred coverage. The court evaluated the claim on the merits and determined that the exclusion did not apply, holding that the insurer did have a duty to defend.

This Court likewise finds it appropriate to determine insurance coverage at the 12(b)(6) stage in a declaratory judgement action and will proceed to evaluate the merits of the case accordingly.

### B.  Insurance Contract Interpretation and Duty to Defend Standards

The interpretation of an insurance contract is a question of law. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 360 (3d Cir. 2004). "A court must interpret the plain language of the insurance contract read in its entirety, giving effect to all its provisions." *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). When an insurance policy's language is clear and unambiguous, a court must enforce that language. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999). If the policy's language is ambiguous, it may be construed in favor of the insured. Ambiguity exists when the policy is susceptible to more than one construction and meaning. *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 621 (E.D. Pa. 2020). In most cases, the parties' reasonable expectations are best evidenced by the language of the insurance policy. *Prudential Prop. & Cas. Ins. Co. v. Hinson*, 277 F. Supp. 2d 468, 476 (E.D. Pa. 2003). However, policy language may not be stretched beyond its plain meaning to create an ambiguity. *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011).

Pursuant to Pennsylvania law, "an insurer's duty to defend is broader than its duty to indemnify." *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020). The duty to defend exists "if the factual allegations of the underlying complaint on its face encompass an injury that is

actually or potentially within the scope of the policy." *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 635 Pa. 1, 131 A.3d 445, 456 (Pa. 2015). "An insurance carrier's duty to defend is distinct from its duty to provide coverage; and, it is interpreted more broadly than the duty to indemnify..." *Coregis Ins. Co. v. Elizabeth Twp.*, No. 2:05-cv-582, 2007 U.S. Dist. LEXIS 23574, at * 7 (W.D. Pa. Mar. 30, 2007). Pursuant to the Third Circuit, "…if a court determines that the former [duty to defend] does not exist, neither does the latter [duty to indemnify]." *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 250 (3d Cir. 2019).

National's claim that it has no duty to indemnify is not ripe at this stage, seeing as there has been no finding of liability in the Underlying Action. Accordingly, the dismissal of the duty to indemnify claim is appropriate but without prejudice.

Determination of whether a claim is potentially covered, requires comparison of "the four corners of the insurance contract to the four corners of the underlying complaint." *Moore*, 228 A.3d at 265. Policies must be read as a whole and their terms must be construed according to their plain meaning. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 676 (3d Cir. 2016). "Courts are not permitted to consider extrinsic evidence" outside of the underlying complaint to determine whether a duty to defend exists. *Lupu v. Loan City, LLC*, 903 F.3d 382, 391 (3d Cir. 2018).

From a reading of the plain language of the Policy, a "wrongful act" is defined as "any actual or alleged negligent act, error or omission in the performance of legal services, or personal injury in the performance of such legal services, for others by you." In the First Amended Complaint ("Underlying Complaint"), SafetyHouse did not assert any Counts sounding in negligence. Rather, all causes of action only include the words "intentional and knowing and deliberate." There is no mention of the word "negligence." The Defendant's argument about the

phrase "without confirming," used to describe the Sternberg Defendants' conduct, lacks merit. It effectively asks the Court to view Attorney Sternberg as someone who believed certain facts without verifying them, rather than someone who acted intentionally, as the Underlying Complaint repeatedly alleges.

### i. Amendment of the Underlying Complaint

Defendants argue that Safetyhouse may potentially further amend the Underlying Complaint to bring an additional count styled as a negligence cause of action. Pursuant to Federal Rule of Civil Procedure 15, although amendment is freely given by Courts, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). Nonetheless, "the mere passage of time" alone is insufficient to deny a motion to amend. *Id*. Courts should examine "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. NCAA,* 252 F.3d 267, 273 (3d Cir. 2001). Courts have repeatedly held that delays may become undue "after a motion for summary judgment is filed where the movant has had previous opportunities to amend a complaint but chose not to do so." *Fatir v. Dowdy*, 2002 U.S. Dist. LEXIS 16480, 2002 WL 2018824 at *7 (D. Del. Sept. 4, 2002).

Pursuant to the current docket, in the Underlying Action, SafetyHouse filed their Complaint on February 23, 2022. Following that, SafetyHouse filed their First Amended Complaint with leave of Court, on July 31, 2023. Now, nearly two years later, the procedural posture of the case involving the Underlying Complaint, is at the summary judgment stage with pending cross motions for summary judgment. The Court duly notes that discovery in the Underlying Action is virtually completed. Amendment by the Plaintiff therein is highly unlikely

11

and would now force the defendant in the Underlying Action to engage in further discovery and expend additional resources. In *Fatir*, The District Court of Delaware duly stated:

> "Motions to amend which follow the filing of a motions [sic] for summary judgment are heavily disfavored. In the present case, the timing of the motion to amend in response to the defendant's motion raises an inference that the plaintiff is attempting to bolster his legal position--and therefore avoid summary judgment--by amending the complaint. This is an unacceptable reason to amend."

*Fatir v. Dowdy*, 2002 U.S. Dist. LEXIS 16480, 2002 at *7 (D. Del. Sept. 4, 2002).

Given the late stage of litigation and the unlikely prospect of amendment, the Defendant's argument that the Plaintiffs could add a negligence claim is speculative and must be rejected.

Defendants further contend that, absent any amendment by the plaintiffs in the Underlying Action, the claim for unjust enrichment does not constitute as an intentional tort. The case cited by Defendants — *Biborosch v. Transamerica Ins. Co.*, A.2d 1050 (Pa. Super. 1992) — is distinguishable from the present matter, as it involved allegations of "gross negligence" in the cause of action. In contrast, the Underlying Complaint in this case contains no such allegations, nor does it include any reference to negligent acts or omissions.

### C. Although Legal Services were Provided by Defendant Sternberg, Policy Exlusions to Coverage May Apply

#### i. Defendant Sternberg's actions constituted Legal Services pursuant to the Factual Allegations in the Underlying Complaint

Defendant Manfred Sternberg asserts that, according to the allegations in the Underlying Complaint, his actions were undertaken in the course of providing "legal services." Under the Policy, only a claim that arises from an act, error or omission in the performance of legal services by the insured would be afforded coverage. Based on the definition provided in the Policy, legal services include acting as an attorney or a public notary. Additionally, acting as

12

"…an administrator, conservator, executor, guardian, trustee, receiver, or in any similar court appointed fiduciary capacity…" are also included in the definition. The definition goes on to explain that "such services are performed in connection with and incidental to the provision of legal services by the Named Insured…" (Compl. ¶ 26).

In the Underlying Complaint, plaintiffs repeatedly refer to Manfred Sternberg as "Sternberg Attorney Defendants" and further allege that Defendant Sternberg was an attorney in good standing, practicing under the laws of Texas. (Underlying Compl. ¶¶ 8-9). This is further confirmed in Exhibit 4 of the Underlying Complaint wherein there was an email exchange between counsel for the plaintiffs ("Mr. Lightman") in the Underlying Action and Defendant Sternberg. In the Exhibit, Mr. Lightman informed Mr. Sternberg that the money SafetyHouse wired to his law firm, was prematurely released the from his attorney escrow account. Mr. Sternberg responded to this e-mail asserting that the funds were correctly disbursed pursuant to his legal interpretation of the Sale And Purchase Agreement ("SPA") and instruction by his client. From these Exhibits attached to the Underlying Complaint, Defendant Sternberg's actions constituted "legal services" since he was acting as an attorney on behalf of his client. Likewise, he disbursed funds from his IOLTA account based on his interpretation of the contractual language at issue, and his understanding of the relevant facts obtained through his representation of his client.

Although Defendants are correct in alleging that legal services were rendered, coverage is challengeable, since the exclusions to the Policy are justifiable, based on the factual allegations in the Underlying Complaint. Plaintiff validly contends that exclusions 2.h, 2.n, and 2.g are appropriate in claiming exclusion of coverage. In E.1, the Policy requires the Plaintiff's defense and payment of "claim expenses or disciplinary proceeding expenses for such allegations only if

13

the claim or disciplinary proceeding is otherwise covered by this Policy, and until there is a final adjudication, judgment, order or ruling by a court or administrative body, or binding arbitration decision or conviction against an Insured…" *See* (Compl. ¶ 28). Accordingly, Defendants argue that without the clear establishment of such allegations, by way of "a final adjudication," any exclusions would be inapplicable. Essentially, Defendants claim that with no final outcome in the Underlying Action, it would be premature to determine the applicability of exclusions pursuant to E.1. However, Plaintiff's Complaint pertains to exclusions in E.2, to preclude coverage for a duty to defend pursuant to their Complaint (Compl. ¶ 36), rendering the Defendant's argument meritless. The Court echoes its previous finding that the determination of a duty to defend must be based on the long-established "four corners" rule. Defendants' assertion that application of exclusions is contingent on a "final adjudication" or a "legal disposition" is mistaken.

### ii. Exclusions 2.h, 2.n, and 2.g are applicable in excluding any duty to defend the Sternberg Defendants in the Underlying Action

In analyzing the potential for coverage pursuant to the factual allegations in the Complaint, it is unlikely that a duty to defend would be imposed on the Plaintiff. Exclusion 2.h excludes coverage for "any claim…arising out of… [the Sternberg Defendants'] conversion, misappropriation, embezzlement, commingling, defalcation or ethically improper use of or disposal of funds or other property, whether held on behalf of clients or third parties" (Compl. ¶ 28). Other District Courts have looked to definitions from Black's Law Dictionary when addressing similar issues involving the application of exclusions in professional liability policies, rather than relying solely on the specific terms used in the policy. *Westport Ins. Corp. v. Hanft & Knight*, *P.C.,* 523 F. Supp. 2d 444, 459 (M.D. Pa. 2007).

According to Black's Law dictionary, misappropriation is defined as "the application of another's property or money dishonestly to one's own use." *Misappropriation*, Black's Law Dictionary (12th ed. 2024). Embezzlement is defined as "The fraudulent taking of personal property with which one has been entrusted, esp. as a fiduciary." *Embezzlement*, Black's Law Dictionary (12th ed. 2024). Lastly defalcation is defined as "the fraudulent misappropriation of money held in trust; financial wrongdoing involving a breach of trust…" *Defalcation*, Black's Law Dictionary (12th ed. 2024).

In the Underlying Complaint, it is alleged that the Sternberg Defendants fraudulently induced SafetyHouse to wire to its attention $1,965,000.00 then wrongfully transferred the funds to the Weiss and Zekaria Defendants without providing the required documents or confirming that the test kits were available. Additionally, they allege the Sternberg Defendants failed to deliver the agreed upon Covid 19 test kits or to refund the money it had received after it failed to deliver the test kits. They further alleged that all defendants were working in concert to carry out this fraudulent scheme with the intent of hiding or wrongfully keeping Plaintiff's money. The allegations from the Underlying Complaint satisfy and are synonymous with the definitions of "conversion," "misappropriation," "embezzlement," and "defalcation." Essentially, the Plaintiffs in the Underlying Complaint allege that the Sternberg Defendants fraudulently appropriated the wired amount of $1,965,000.00, which they were entrusted with, and without any permission, released them to the Weiss and Zekaria Defendants.

Defendant Sternberg contends that the exclusion is inapplicable because the Underlying Complaint fails to allege conduct using the specific terminology or language contained in the Policy. This argument is unconvincing as other District Courts have consulted definitions from Black's Law Dictionary when addressing analogous issues concerning the application of

15

exclusions in professional liability policies, instead of adhering strictly to the policy's exact wording. *Westport Ins. Corp.,* 523 F. Supp. 2d at 459.

Exclusion 2.n states that coverage for "any claim…arising out of… [t]he loss or destruction, … of any asset in your care, custody or control, or out of the misappropriation of, or failure to give an account of, any asset in your care, custody or control, including the commingling of funds…" is excluded. (Compl. ¶ 28) Similarly, Exclusion 2.g excludes coverage for "any claim…arising out of…the destruction, diminution in value or loss of any property or asset." *Id*. By using the above definition from Black's Law Dictionary, the policy requires the insured to have used another's property or money dishonestly to one's own exploitation. "Loss" is defined as "an undesirable outcome of a risk; the disappearance or diminution of value… in an unexpected or relatively unpredictable way…" *Loss*, Black's Law Dictionary (12th ed. 2024).

Based on these definitions and the factual allegations in the Underlying Complaint, the Plaintiffs allege serious and illegal misconduct by the Defendants, not negligence in the performance of legal duties and obligations.  Specifically, they claim the Defendants misappropriated funds that were wired into the firm's account. Those funds were then wrongfully disbursed to a third party without proper authorization. As a result, SafetyHouse suffered a financial loss.

According to the SPA, the Sternberg Defendants were only permitted to release the funds after SafetyHouse received both a bill of lading and a bill of sale. However, the funds were released without either document being provided. No Covid Test Kits were delivered, and no refund was issued to SafetyHouse. Accordingly, the claims asserted in the Underlying Complaint fall squarely within the scope of the Policy's exclusion provisions as plainly defined. Based on this analysis, it is clear that National does not owe Defendants a duty to defend. National's claim

that it has no duty to indemnify is not ripe for adjudication at this stage, as there has been no determination of liability in the Underlying Action. Accordingly, the dismissal of the duty to indemnify claim is appropriate but without prejudice.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is Denied. An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**